KCAF INVESTORS, L.L.C., Sue Ann Burke, Logic II, L.L.C., Logic III, L.L.C. and Stretch/Jeffrey Rumaner, Appellants,

v.

KANSAS CITY DOWNTOWN STREET-CAR TRANSPORTATION DEVELOPMENT DISTRICT, A Missouri Political Subdivision, Respondent.

No. WD 76354.

Missouri Court of Appeals, Western District.

Aug. 7, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 2013.

Application for Transfer Denied Dec. 24, 2013.

Mark J. Bredemeier, Lee's Summit, MO, for appellant.

Robert A. Henderson and Douglas S. Stone, Kansas City, MO, for respondent.

Before Division Four: JAMES E. WELSH, P.J., ALOK AHUJA, J. and JACK R. GRATE, SP. J.

ALOK AHUJA, Judge.

KCAF Investors, L.L.C, Logic II, L.L.C, Logic III, L.L.C, Sue Anne Burke, and Jeffrey "Stretch" Rumaner (collectively "Appellants") appeal from a judgment entered by the Circuit Court of Jackson County. The circuit court dismissed Appellants' claims that certain real-property assessments and sales taxes imposed within the Kansas City Downtown Streetcar Transportation Development District are unlawful, based on the court's conclusion that Appellants' claims were untimely, and should have been asserted in earlier litigation. We affirm.

### Factual Background[1]

The Kansas City Downtown Streetcar Transportation Development District was

---

1. The facts recited in this opinion are taken from Appellants' petition, and from the circuit court's judgment in an earlier lawsuit we refer to as the "Formation Lawsuit." Appellants argue that, as a procedural matter, the circuit court was not entitled to rely on the judgment in the Formation Lawsuit in ruling on the Streetcar District's motion to dismiss. We disagree. *See Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 n. 1 (Mo. banc 2002). In any event, our disposition of the issues on appeal does not depend on the precise content of the judgment in the Formation Lawsuit. Our decision instead

formed in 2012 pursuant to the Missouri Transportation Development District Act, §§ 238.200 to 238.280.[2] The Streetcar District was formed for the purpose of constructing and operating a streetcar line to run for approximately two miles along Main Street in downtown Kansas City. The construction and operation of the streetcar line is to be funded, in substantial part, by special assessments on real property located within the District, and by a sales tax, not to exceed one percent, on retail sales within the District. According to Appellants' petition, the streetcar line is estimated to cost in excess of $100 million.

The formation of the District was initiated by a prior lawsuit filed pursuant to §§ 238.207 to 238.212. On February 6, 2012, the City Council of the City of Kansas City, and the Board of Commissioners of the Port Authority of Kansas City, filed a petition in the Circuit Court of Jackson County requesting that the circuit court call an election to authorize the formation of the Streetcar District. *City Council of the City of Kansas City, Missouri, et al. v. Kansas City Area Transportation Authority, et al.*, Case No. 1216–CV02419 (the "Formation Lawsuit"). The City and Port Authority named the Missouri Highway and Transportation Commission and the Kansas City Area Transportation Authority as respondents in the Formation Lawsuit.

Pursuant to § 238.212.1, the Circuit Court ordered notice of the pending suit to be published in the *Kansas City Star* once a week for four consecutive weeks in February and March 2012, advising the public that pleadings in support of or opposition to the petition were to be filed no later than April 2, 2012, and also notifying the public of the dates scheduled for a public hearing and a judicial hearing on the petition. A number of entities filed pleadings in support. U.S. Trust, Bank of America N.A., Trustee, filed an Answer and Reply in opposition, which was voluntarily dismissed on April 12, 2012. No other opposition was filed.

The court conducted a public hearing on the issues raised in the Formation Lawsuit on April 17, 2012, and a judicial hearing on April 18, 2012. Eleven persons testified at the public hearing in support of the petition; three persons testified in opposition.

Following the hearings, the circuit court entered a sixteen-page judgment in the Formation Lawsuit on April 27, 2012. As required by § 238.210.2, the circuit court determined: that the petition was in proper form and had been properly served; that the proposed Streetcar District, and the funding mechanisms to be employed to finance the streetcar project, were lawful and constitutional; and that the District and the proposed funding mechanisms would not impose an undue burden on any property owner within the District, and were not unjust or unreasonable. Based on those determinations, the circuit court ordered the conduct of a "Formation Election" by mail-in ballot, in which the District's formation was approved by voters by a margin of 319 votes in favor, and 141

rests primarily on the fact that the Formation Lawsuit was actually litigated under the relevant statutes; that notice of the Formation Lawsuit was provided by publication as required by § 238.212.1; and that the circuit court in the Formation Lawsuit entered a judgment declaring the District and its funding mechanisms lawful, and entered orders calling elections in which voters approved the District's formation and the taxes Appellants now challenge. Those basic facts are affirmatively alleged in Appellants' petition.

2. Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, updated through the 2012 Cumulative Supplement.

opposed. No appeal was taken from the circuit court's judgment in the Formation Lawsuit.

Following the certification of the results of the Formation Election, the circuit court entered a further order in the Formation Lawsuit on August 2, 2012, declaring the formation and existence of the Streetcar District. On August 24, 2012, the circuit court entered an order calling a second mail-in ballot election, to authorize the imposition of the sales tax, and the special assessments on real property within the District. The sales tax passed by a vote of 351 in favor and 198 opposed; the real-property special assessments passed by a vote of 344 in favor and 206 opposed. The results of the election approving the District's funding mechanisms were certified on December 12, 2012.

Only natural persons residing within the District were permitted to vote in either election.

On January 31, 2013, Appellants filed a Petition for Declaratory Judgment and Injunctive Relief against the District in the Circuit Court of Jackson County. The limited liability companies allege that they own real property in the District which will be subject to the special assessments. The individual plaintiffs, Ms. Burke and Mr. Rumaner, allege that they are the owners and managing members of the limited liability company-plaintiffs; they also allege that they regularly shop in the District, and are therefore subject to the special sales tax.

Appellants' petition alleges that the real property special assessments are unlawful, because owners of real property in the District were not notified of, or permitted to vote in, the election which authorized the special assessments. Appellants allege that the sales tax is unlawful with respect to part of the District, because part of the Streetcar District also falls within the pre-existing 1200 Main/South Loop Transportation Development District, and is already subject to a one-percent retail sales tax to fund that district. Appellants note that § 238.235.1(7) provides that the sales tax supporting a transportation development district is limited to a one-percent rate; Appellants contend that § 238.235.1(7) does not permit the "stacking" of separate transportation-related sales taxes, in excess of the one-percent limit. Appellants' petition prays for a judgment declaring the real-property special assessments and the sales tax (as applied in the area overlapping the 1200 Main District) to be unlawful; they also seek injunctive relief against the collection of the allegedly unlawful levies.

On March 15, 2013, the circuit court entered its judgment granting the Streetcar District's motion to dismiss Appellants' petition. The court held that Appellants' challenges to the real-property special assessments were "election contests" which were untimely under § 115.577, because Appellants did not bring their claims within thirty days of the certification of the results of the election approving the special assessments. The circuit court also held that Appellants were estopped from asserting any of their claims because they should have raised their challenges in the Formation Lawsuit, prior to the elections which authorized the District's formation and the imposition of the sales tax and real-property assessments.

This appeal follows.

## Analysis

Exercising *de novo* review, *In re T.Q.L.*, 386 S.W.3d 135, 139 (Mo. banc 2012), we conclude that Appellants are estopped from asserting their claims because those claims could, and should, have been raised and decided in the Formation Lawsuit.

## I.

The Missouri Transportation Development District Act establishes a detailed scheme for the formation of transportation development districts, and for the adoption of particular funding mechanisms to finance covered transportation projects.

Section 238.205.1 provides that a transportation development district "may be created to fund, promote, plan, design, construct, improve, maintain, and operate one or more projects or to assist in such activity." Transportation development districts formed under the Act are political subdivisions of the State. § 238.205.2.

The Act specifies that a covered "project"

includes any bridge, street, road, highway, access road, interchange, intersection, signing, signalization, parking lot, bus stop, station, garage, terminal, hangar, shelter, rest area, dock, wharf, lake or river port, airport, railroad, light rail, or public mass transportation system and any similar or related improvement or infrastructure. In the case of a district located in a home rule city with more than four hundred thousand inhabitants and located in more than one county, whose district boundaries are contained solely within that portion of such a home rule city that is contained within a county with a charter form of government and with more than six hundred thousand but fewer than seven hundred thousand inhabitants, the term project shall also include the operation of a street car or other rail-based or fixed guideway public mass transportation system, and the revenue of such district may be used to pay for the design, construction, ownership and operation of such a street car or other rail-

based or fixed guideway public mass transportation system, but not the operation of a bus system located within such district, by such district or such municipality, or by a local transportation authority having jurisdiction within such municipality.

§ 238.202.1(5).[3] The methods available to fund covered projects, which include retail sales taxes and special assessments on real property, are specified in §§ 238.227 to 238.242.

The City of Kansas City and the Port Authority of Kansas City both constitute "local transportation authorities" within the meaning of § 238.202.1(4). They proposed to jointly establish the Streetcar District. The formation of the District was therefore governed by § 238.207.5, which provides in relevant part:

(1) . . . [I]f two or more local transportation authorities have adopted resolutions calling for the joint establishment of a district, the governing body of any one such local transportation authority may file a petition in the circuit court of any county in which the proposed project is located requesting the creation of a district. . . .

. . . .

(3) The petition shall set forth:

(a) That the petitioner is the governing body of a local transportation authority acting in its official capacity . . . ;

(b) The name of each local transportation authority within the proposed district. The resolution of the governing body of each local transportation authority calling for the joint

---

**3.** The second sentence of the definition of a "project", which comprehends the streetcar project at issue in this case, was added to § 283.202.1(5) in 2011. *See* S.B. No. 173, 2011 Vernon's Mo. Session Laws 262, 267.

establishment of the district shall be attached to the petition;

(c) The name and address of each respondent. Respondents must include the commission and each affected local transportation authority within the proposed district, except a petitioning local transportation authority;

(d) A specific description of the proposed district boundaries including a map illustrating such boundaries;

(e) A general description of each project proposed to be undertaken by the district, including a description of the approximate location of each project;

(f) The name of the proposed district;

(g) The number of members of the board of directors of the proposed district;

(h) A request that the question be submitted to the qualified voters within the limits of the proposed district whether they will establish a transportation development district to develop the projects described in the petition;

(i) A proposal for funding the district initially, pursuant to the authority granted in sections 238.200 to 238.275, together with a request that the imposition of the funding proposal be submitted to the qualified voters residing within the limits of the proposed district; provided, however, the funding method of special assessments may also be approved as provided in subsection 1 of section 238.230; and

(j) A statement that the proposed district shall not be an undue burden on any owner of property within the district and is not unjust or unreasonable.

Section 238.210 specifies how the circuit court shall proceed in response to the filing of a petition seeking the formation of a transportation development district. It provides:

1. Within thirty days after the petition is filed, the circuit court clerk shall serve a copy of the petition on the respondents who shall have thirty days after receipt of service to file an answer stating agreement with or opposition to the creation of the district. If any respondent files its answer opposing the creation of the district, it shall recite legal reasons why the petition is defective, why the proposed district is illegal or unconstitutional, or why the proposed method for funding the district is illegal or unconstitutional. The respondent shall ask the court for a declaratory judgment respecting these issues. The answer of each respondent shall be served on each petitioner and every other respondent named in the petition. Any resident, taxpayer, any other entity, or any local transportation authority within the proposed district may join in or file a petition supporting or answer opposing the creation of the district and seeking a declaratory judgment respecting these same issues within thirty days after the date notice is last published by the circuit clerk.

2. The court shall hear the case without a jury. If the court shall thereafter determine the petition is defective or the proposed district is illegal or unconstitutional, or shall be an undue burden on any owner of property within the district or is unjust and unreasonable, it shall enter its declaratory judgment to that effect and shall refuse to make the certifications requested in the pleadings. If the court determines that any proposed funding method is illegal or unconstitutional, it shall enter its judgment striking that funding method in whole or

part. If the court determines the petition is not legally defective and the proposed district and method of funding are neither illegal nor unconstitutional, the court shall enter its judgment to that effect. If the petition was filed by registered voters or by a governing body ... pursuant to subsection 5 of section 238.207, the court shall then certify the single question regarding district creation, project development, and proposed funding for voter approval.....

3. Any party having filed an answer or petition may appeal the circuit court's order or declaratory judgment in the same manner provided for other appeals. The circuit court shall have continuing jurisdiction to enter such orders as are required for the administration of the district after its formation.

The Act specifies that, where a petition to form a transportation development district is filed by a governing body, the circuit clerk shall give notice of the filing of the petition by publication to all registered voters and property owners within the proposed district:

If the petition was filed by registered voters or by a governing body, the circuit clerk in whose office the petition was filed shall give notice to the public by causing one or more newspapers of general circulation serving the counties or portions thereof contained in the proposed district to publish once a week for four consecutive weeks a notice substantially in the following form:

NOTICE OF PETITION TO SUBMIT TO A
POPULAR VOTE THE CREATION AND FUNDING OF A
TRANSPORTATION DEVELOPMENT DISTRICT

Notice is hereby given to all persons residing or owning property in (here specifically describe the proposed district boundaries), within the state of Missouri, that a petition has been filed asking that upon voter approval, a transportation development district by the name of "................. Transportation Development District" be formed for the purpose of developing the following transportation project: (here summarize the proposed transportation project or projects). The petition also requests voter approval of the following method(s) of funding the district, which (may) (shall not) increase the total taxes imposed within the proposed district: (describe the proposed funding methods). A copy of this petition is on file and available at the office of the clerk of the circuit court of.............. County, located at..............., Missouri. You are notified to join in or file your own petition supporting or answer opposing the creation of the transportation development district and requesting a declaratory judgment, as required by law, no later than the.............. day of.............., 20.... You may show cause, if any there be, why such petition is defective or proposed transportation development district or its funding method, as set forth in the petition, is illegal or unconstitutional and should not be submitted for voter approval at a general, primary or special election as directed by this court.
§ 238.212.1.

The Act provides that, "[i]f the circuit court certifies the petition for voter approval, it shall call an election pursuant to section 238.216." § 238.215.1. The Act defines "qualified voters" as follows:

(a) Within a proposed or established district, except for a district proposed under subsection 1 of section 238.207, any persons residing therein who have

registered to vote pursuant to chapter 115; or

(b) Within a district proposed or established under subsections 1 or 5 of section 238.207 which has no persons residing therein who have registered to vote pursuant to chapter 115, the owners of record of all real property located in the district, who shall receive one vote per acre, provided that if a registered voter subsequent to the creation of the district becomes a resident within the district and obtains ownership of property within the district, such registered voter must elect whether to vote as an owner of real property or as a registered voter, which election once made cannot thereafter be changed.

§ 238.202.2(2).

## II.

■ Although not referenced in Appellants' Point Relied On, in the argument section of their Brief Appellants contend that the Formation Lawsuit could not have preclusive effect against them, because they were given constitutionally defective notice of the Formation Lawsuit. We begin by addressing this inadequate-notice claim.

As noted above, the circuit court was required to notify residents and property owners in the District of the pendency of the Formation Lawsuit, and of their right and obligation to intervene in that suit, by publication in a general-circulation newspaper for four consecutive weeks. § 238.212.1. The circuit court in the Formation Lawsuit complied with this mandate by directing that notice of the suit appear for four consecutive weeks in the *Kansas City Star* newspaper.

In an argument of less than one page, Appellants contend that this notice by publication violated their constitutional right to due process of law. Appellants cite a single case to support their due-process argument: *Schwartz v. Dey*, 780 S.W.2d 42 (Mo. banc 1989), which observes that prior decisions from the Supreme Court of the United States "generally stand for the proposition that *when a publicly recorded property interest is at stake*, notice by publication is insufficient to satisfy due process." *Id.* at 44 (emphasis added). *Schwartz* involved a tax sale which wholly divested owners of their interests in a real property.

■ The Supreme Court of the United States has held that "due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jones v. Flowers*, 547 U.S. 220, 226, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). "[W]hether a particular method of notice is reasonable depends on the particular circumstances." *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). "[A]ssessing the adequacy of a particular form of notice requires balancing the 'interest of the State' against 'the individual interest sought to be protected by the Fourteenth Amendment.'" *Jones*, 547 U.S. at 229, 126 S.Ct. 1708 (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. 652).

As *Schwartz* recognizes, the Supreme Court of the United States has held that, where governmental action will divest persons of their interests in property, or otherwise directly affect their property interests, pre-deprivation notice by publication is insufficient, if more direct methods of communication are reasonably available. *See, e.g., Pope*, 485 U.S. 478, 108 S.Ct. 1340 (probate nonclaim statute extinguished

hospital's claim for services rendered to decedent in his final illness); *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) ("The tax sale immediately and drastically diminishes the value of [a mortgagee's] security interest by granting the tax-sale purchaser a lien with priority over that of all other creditors. Ultimately, the tax sale may result in the complete nullification of the mortgagee's interest, since the purchaser acquires title free of all liens and other encumbrances at the conclusion of the redemption period."); *Walker v. City of Hutchinson,* 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956) (taking of owner's property through condemnation); *Mullane,* 339 U.S. at 313, 70 S.Ct. 652 (proceeding for settlement of trustee's accounts "may cut off [beneficiaries'] rights to have the trustee answer for negligent or illegal impairments of their interests. Also, their interests are presumably subject to diminution in the proceeding by allowance of fees and expenses to one who . . . may conduct a fruitless or uncompensatory contest.").

■ On the other hand, the Supreme Court of the United States has also recognized that the requirement of individually directed notice does not apply to every person "who conceivably may have a claim" subject to extinguishment by governmental action. *Pope,* 485 U.S. at 490, 108 S.Ct. 1340; *see also Mullane,* 339 U.S. at 317, 70 S.Ct. 652 ("Nor do we consider it unreasonable for the State to dispense with more certain notice to those beneficiaries whose interests are either conjectural or future"). Thus, "the scope of potential adverse consequences to the person claiming a right to more effective notice" must be assessed to determine what notice is

due. *Greene v. Lindsey,* 456 U.S. 444, 450, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982).

■ This is not a case like *Schwartz,* in which the challenged governmental action threatens to take Appellants' property, or otherwise directly affect it. Instead, in this case Appellants challenge the tax levies on grounds equally applicable to all members of the affected area, and seek injunctive relief which would benefit all such persons. As we explain more fully in § III.C, below, the Supreme Court of the United States has held that cases like this one are properly characterized, for purposes of due-process analysis, as challenges to "public action that has only an indirect impact on [a taxpayer's] interests." *Richards v. Jefferson Cnty.,* 517 U.S. 793, 803, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996); *see also, e.g., Sierk v. Reynolds,* 484 S.W.2d 675, 681 (Mo.App.1972) ("the right of the City of Springfield to construct sanitary sewers and to impress a lien upon the property of the landowners thereby benefited . . . is a question of general public interest"). In this category of cases, "the States have wide latitude to establish procedures not only to limit the number of judicial proceedings that may be entertained but also to determine whether to accord a taxpayer any standing at all." *Richards,* 517 U.S. at 803, 116 S.Ct. 1761.

Appellants' due-process argument is limited to the claim that, because notice by publication is constitutionally insufficient in cases in which an identifiable individual's property is directly taken at a tax sale, notice by publication is insufficient here. The quoted statements from *Richards* demonstrate, however, that Appellants' interests in this case are, for due-process purposes, fundamentally different than the wholesale taking of an owner's real property at issue in *Schwartz.*[4] The fact that

---

4. The judgment in the Formation Lawsuit indicates that, at the maximum assessment rate

proposed by the District's proponents, a commercial property valued at $1 million would

notice by publication was deemed insufficient in *Schwartz* does not dictate the same result here.

What we have said above is sufficient to resolve Appellants' due-process claim: the single case they cite to support their argument involves a wholly dissimilar situation. Appellants' property interests are not "at stake" in the manner contemplated by *Schwartz*, 780 S.W.2d at 45. Given the limited nature of Appellants' argument, we do not consider it necessary, or appropriate, to engage in a more extended discussion of the various factors which may be relevant to the determination of the adequacy of notice by publication here, such as the nature of the governmental interests at stake, the feasibility and efficacy of other forms of notice (for example, notice by mail, by electronic means, or by posting), the extent to which Appellants' interests may be protected by the statutory respondents in the Formation Lawsuit or by other property owners within the proposed District, etc.

The claim that notice by publication is insufficient with respect to this sort of taxpayer challenge may raise a host of difficult issues. *See*, for example, the extended discussion of a similar claim in *Salt Lake City Corp. v. Jordan River Restoration Network*, 299 P.3d 990, 1005–18 (Utah 2012). But Appellants do not address any of these issues; instead, they argue only that the notice rules applicable to tax sales must be applied, wholesale and without modification, in this very different context. To address the myriad other issues implicated by Appellants' assertion of unconstitutional notice would require us to respond to arguments Appellants have not made. Moreover, we would be required to do so on a record which is insufficient to permit us to address such matters, or engage in the balancing of competing interests required by the relevant caselaw. For example, we do not know the number of residents and property owners to whom more targeted notice would need to be addressed, or the means by which their identities and addresses could be reliably determined. We leave a full-blown analysis of the due-process issue for another day, when it is properly presented.[5]

### III.

We now turn to the question whether the judgment in the Formation Lawsuit estops Appellants from asserting their current claims. For the reasons stated in § II, above, we address this question on the assumption that Appellants were adequately notified of the pendency of the Formation Lawsuit, and of their opportunity to participate in that suit. On that assumption, we conclude that Appellants were obligated to raise their claims in the Formation Lawsuit, and

pay an assessment of approximately $1,540 per year. While this is not insubstantial, it is a far cry from the possibility of complete divestiture of a property owner's interests at issue in *Schwartz*.

5. We note that cases from other jurisdictions have held that notice by publication is sufficient with respect to proceedings filed by governmental agencies to determine the legality of particular bonds before their issuance, even though the bond-validation proceedings have the effect of precluding later legal challenges. *See Salt Lake City Corp.*, 299 P.3d at 1005–18; *Keys Citizens for Responsible Gov't Inc. v. Fla. Keys Aqueduct Auth.*, 795 So.2d 940, 949–50 (Fla.2001); *Thomas v. Ala. Mun. Elec. Auth.*, 432 So.2d 470, 477 (Ala.1983); *Jackson v. Waller Indep. Sch. Dist.*, No. 07–3086, 2008 WL 818330, at *7 (S.D.Tex. Mar. 24, 2008); *but see Ridenour v. Bay Cnty.*, 366 Mich. 225, 114 N.W.2d 172, 178–80 (1962). Such proceedings arguably bear some similarities to the district-formation suits required by the Missouri Transportation Development District Act.

are precluded from litigating their challenges in this later action.

## A.

Appellants' claims raise challenges which the circuit court was authorized to address in the Formation Lawsuit. For example, Appellants claim that the sales tax is unlawful to the extent it applies to an area which is already subject to a sales tax supporting another transportation development district (their "stacking" argument). Section 238.210.2 specifically provides, however, that "[i]f the court determines [in the Formation Lawsuit] that any proposed funding method is illegal or unconstitutional, it shall enter its judgment striking that funding method in whole or part." Therefore, if the circuit court in the Formation Lawsuit had determined that the Streetcar District's proposed sales tax was unlawful in the portion of the District overlapping the 1200 Main/South Loop Transportation Development District, it was authorized to declare the sales tax unlawful to that extent, and to "enter its judgment striking that funding method ... in part."

Appellants also claim that they should have been permitted to vote on the approval of the special real-property assessments, and that they were entitled to notice of the elections for formation of the District and approval of the funding mechanisms. The universe of persons and entities entitled to vote in the formation and funding-mechanism elections was dictated by the definition of "qualified voters" in § 238.202.2(2). Moreover, the circuit court's judgment in the Formation Lawsuit specified in detail the manner in which the mail-in elections would be conducted, including the notice of the elections which would be provided to qualified voters; indeed, the entire purpose of the Formation Lawsuit was to secure orders from the circuit court calling the elections, under the circuit court's supervision. To the extent Appellants had objections to the composition of the electorate, or the manner in which the elections would be conducted, on statutory, constitutional, or other grounds, the circuit court was authorized to decide those issues in the Formation Lawsuit, *before* the elections were held.[6]

## B.

We also conclude that the Appellants *could have*, and *should have*, raised their claims in the Formation Lawsuit.

1. The Act gave the Appellants, which are limited liability companies that own property in the District, the authority to intervene as of right in the Formation Lawsuit. Section 238.210.1 specifies that "[a]ny resident, taxpayer, any other entity, or any local transportation authority within the proposed district may join in or file a petition supporting or answer opposing the creation of the district and seeking a declaratory judgment respecting these same issues within thirty days after the date notice is last published by the circuit court." Section 238.210.3 then provides that "[a]ny party having filed an answer or petition may appeal the circuit court's order or declaratory judgment in the same manner provided for other appeals."

---

**6.** Indeed, in arguing that their challenges to the real-property special assessments are not "election contests" (an issue we need not address), Appellants acknowledge that their claims concerning the real-property assessments could have been raised, and decided, in the Formation Lawsuit. Opening Br. at 24–25 ("In this case, the TDD Act states that Appellants' claims in Count II (and in Counts I, III and IV, as well) are contemplated squarely by Section 238.210, which permits challenges as to 'why the proposed district is illegal or unconstitutional, *or why the proposed method for funding the district is illegal or unconstitutional.*' Section 238.210 (emphasis added).").

While § 238.210.1 states that "[a]ny resident, taxpayer, [or] any other entity ... within the proposed district *may*" file a pleading in a formation lawsuit to support or oppose the petition, the word "may" is used to indicate that affected parties can choose whether to participate in the formation lawsuit. The word "may" cannot be read to give *the circuit court* discretion to refuse to permit a party identified in § 238.210.1 to participate in a formation lawsuit. Nothing in the statute suggests that a circuit court could refuse to consider a timely filed petition or answer submitted by a district resident or property owner, or could refuse to permit such persons to participate in the formation litigation. Section 238.210.1 gives the enumerated parties the unconditional right to intervene; it does not merely recognize permissive intervention. *See, e.g., Martin v. Busch*, 360 S.W.3d 854, 857–58 (Mo.App. E.D.2011) (holding that wrongful death statute, which specifies that "damages may be sued for" by specified classes of individuals, grants unconditional right to intervene to any member of particular class, if another member of that class commences suit); *Moxness v. Hart*, 131 S.W.3d 441 (Mo.App.W.D.2004) (interpreting § 525.090, which states that "[a]ny person claiming property ... attached in the hands of a garnishee, may interplead in the cause," as providing an unconditional right to intervene).[7]

The fact that the Appellant limited liability companies had an unconditional statutory right to intervene in the Formation

7. In a footnote to their Opening Brief, Appellants argue that, whether or not the property-owning limited liability companies had the right to assert their claims in the Formation Lawsuit by virtue of § 238.210.1, this right to intervene did not extend to the individual Appellants (Ms. Burke and Mr. Rumaner), who are not residents of, or owners of property within, the Streetcar District. Assuming that Ms. Burke and Mr. Rumaner, individually, do not fall within the class of persons to whom § 238.210.1 affords an unconditional right to intervene, Appellants' petition alleges that they are owners, and the managing members, of the Appellants who are limited liability companies. Under the Missouri Limited Liability Company Act, "[e]very manager is an agent of the limited liability company for the purpose of its business and affairs" "[i]f the articles of organization provide that management of the limited liability company is vested in one or more managers." § 347.065.2. With respect to claims which could be asserted by the limited liability companies, it would appear that Ms. Burke and Mr. Rumaner were in privity with the companies, and would be estopped from litigating issues which the limited liability companies could have litigated in the Formation Lawsuit. *See, e.g., Mo. Mexican Prods., Inc. v. Dunafon*, 873 S.W.2d 282, 286 (Mo.App.W.D. 1994) (finding privity between sole owner and operator and corporation concerning automobile titled and registered jointly); *Moore v. Swayne–Hunter Farms, Inc.*, 841 S.W.2d 308, 314 (Mo.App.S.D.1992) ("The public polices underlying the doctrine of collateral estoppel, as a bar to repetitious litigation, would support a finding of privity between a close corporation and its sole or controlling stockholder." (citations and internal quotation marks omitted)); *see generally* RESTATEMENT (2D) OF JUDGMENTS § 59, comment e ("For the purpose of affording opportunity for a day in court on issues contested in litigation, ... there is no good reason why a closely held corporation and its owners should be ordinarily regarded as legally distinct. On the contrary, it may be presumed that their interests coincide and that one opportunity to litigate issues that concern them in common should sufficiently protect both.").

We recognize that in *In re Clarkson Kehrs Mill Transportation Development District*, 308 S.W.3d 748 (Mo.App.E.D.2010), the Eastern District held that persons residing on or owning property *neighboring* a transportation development district could not intervene as of right in a formation lawsuit. *Id.* at 753–56. The putative intervenors apparently did not did not argue that they fell within the class of persons granted an unconditional right to intervene by § 238.210.1, however. In this case, the Appellant limited liability companies own property *in*, not merely *near*, the District. *Clarkson Kehrs Mill* is distinguishable.

Lawsuit is significant. In *Newman v. City of Warsaw*, 129 S.W.3d 474 (Mo.App.W.D. 2004), we addressed the converse situation: in that case, a resident of an annexing municipality did *not* have the unconditional statutory right to intervene in a pre-annexation declaratory judgment action brought pursuant to § 71.015.1(5)(c). We held that, because the resident of the annexing city had only a *permissive* right to intervene in the earlier action, he could not be precluded from bringing his own later declaratory judgment action, challenging the lawfulness of the annexation. Our discussion strongly suggests, however, that the opposite result would be appropriate where the later litigant had an unconditional right to intervene in the earlier action:

> Even if Newman could intervene [permissively] in the statutory declaratory judgment action, it does not follow that he is limited to intervention and is barred from raising the issue in a separate declaratory judgment action. [*In re* ] *Osage Beach* [, 568 S.W.2d 539 (Mo. App.1978),] ... states that a party who does not have the status of a necessary party or an intervenor as a matter of right with regard to the statutory declaratory judgment action (in other words, is only a permissive intervenor) can file an independent declaratory judgment action to adjudicate that party's claims. *See* 568 S.W.2d at 541. The reasoning behind this conclusion is sound. If a trial court has the discretion to bar Newman from intervening in the statutory declaratory judgment action, then that action cannot be the sole means by which parties such as Newman may judicially challenge the annexation. Such parties must be afforded some other opportunity to raise their claims.

129 S.W.3d at 477–78.

In this case, unlike in *Newman*, each Appellant limited liability company "ha[d]

the status of ... an intervenor as a matter of right with regard to the statutory declaratory judgment action"; they *had* an "opportunity to raise their claims" in the Formation Lawsuit. Moreover, for the reasons stated in § II, above, we presume that Appellants had adequate notice of the pendency of the Formation Lawsuit, and of their right to assert objections in that case. Allowing Appellants to litigate the present lawsuit is unnecessary to "afford[ ] [them] some ... opportunity to raise their claims."

2. We also conclude that, under a fair reading of the statute, the Missouri Transportation Development District Act *required the* Appellants to raise their claims in the Formation Lawsuit.

The Act requires that the circuit court (and a reviewing court, if an appeal is taken) pass on the legality and constitutionality of a transportation development district, and its funding mechanisms, *before* an election is held to approve the district. The evident purpose of this requirement is to surface, and resolve, any legal objections to the district's formation and proposed funding *before* substantial actions are taken by the district, its proponents, and election authorities to implement the district and its funding mechanisms. Such actions include conducting the formation and funding-mechanism elections themselves; levying and collecting approved taxes and assessments; incurring financial or contractual obligations; and commencing construction, property acquisition, and other similar activities.

The Act requires that the Missouri Highway and Transportation Commission, and any local transportation agency within the proposed district, be named as a respondent in the formation lawsuit, and served with a copy of the petition; the

statutory respondents are required to state their position as to whether the district or its funding mechanisms are legally or constitutionally infirm. § 238.210.1. Moreover, the Act requires that notice by publication be provided to other affected parties, giving them an opportunity to exercise their right to intervene in the litigation. § 238.212.1.

The mandate that notice be published, addressed to persons who are not required to be named as petitioners or respondents, reflects the legislature's intent that the rights of those parties will be affected by the formation litigation, whether or not they choose to join in the litigation to support or oppose the petition. There is no other explanation for the notice-by-publication requirement. The statute separately specifies that "the circuit court clerk shall serve a copy of the petition on the respondents" who are required to be named in a formation suit. § 238.210.1. In most litigation, service on the named defendants or respondents, as required by § 238.210.1, is the sole official notice required to be given, since those are the only parties whose rights will be directly affected by the judgment. Section 238.212.1's separate requirement of notice by publication, addressed to other potentially interested persons who are *not* named respondents, must signify something. *Cf. Johnson v. Mo. Bd. of Probation & Parole,* 359 S.W.3d 500, 505 (Mo. App.W.D.2012) (" 'the legislature is never presumed to have committed a useless act' " (citation omitted)).

The wording of the statutorily-mandated notice also indicates that affected parties

have an obligation to intervene in the formation litigation, if they have threshold objections to the legality or constitutionality of the proposed district or its funding mechanisms. The notice states that "[y]ou are notified to join in or file your own petition supporting or answer opposing the creation of the transportation development district and requesting a declaratory judgment, as required by law, no later than" a date specified. § 238.212.1. The statement that affected parties are "notified to join in or file" pleadings in the formation lawsuit, "as required by law," "no later than" a specified date, indicates that participation in the formation lawsuit is mandatory for any party who wishes to have its position heard. The next sentence only reinforces this interpretation, since it admonishes those receiving the notice that they "may show cause, *if any there be* " why the petition is defective, or why the proposed district or its funding mechanisms are illegal or unconstitutional. *Id.* (emphasis added).

We recognize that the statute does not explicitly state that interested parties who fail to participate in the formation litigation will be barred from later raising claims they could have raised in the formation lawsuit itself. Nevertheless, the Act's structure and wording clearly indicate that the legislature intended that the circuit court's ruling on the legality of the proposed transportation development district, and its funding mechanisms, would be definitive, and that any person or entity objecting to the proposed district would voice their objections during the formation litigation itself.[8]

8. Appellants argue that they could not have raised their claims in the Formation Lawsuit, because they would not have had standing, and their claims would not have been considered ripe and justiciable, until the sales tax and real-property special assessments were

actually approved by voters. But the Streetcar District's motion to dismiss does not depend on an argument that Appellants should have *commenced an action* to challenge the proposed sales tax and real-property assessments prior to the elections approving those

## C.

Our reading of the Missouri Transportation Development District Act is bolstered by caselaw which has recognized similar limitations on citizens' rights to challenge governmental actions based on objections held in common by the public, where the challengers seek relief benefiting the public generally. Those decisions make clear that, with respect to challenges like those Appellants raise, preclusion principles may be applied despite the fact that Appellants were not parties to the Formation Lawsuit.

Applying due-process principles, the Supreme Court of the United States has limited the circumstances in which a litigant may be precluded from asserting a claim based on earlier litigation in which the individual was not a party. Nevertheless, the Court has recognized that, where a taxpayer seeks to assert rights belonging to the public generally, which have only an indirect impact on the individual taxpayer, States may limit, or even wholly eliminate, the taxpayer's opportunity to litigate its claims. Thus, in *Richards v. Jefferson County,* 517 U.S. 793, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996), the Supreme Court identified a category of cases "in which the taxpayer is using that status to entitle him to complain about an alleged misuse of public funds, or about other public action that has only an indirect impact on his interests." *Id.* at 803, 116 S.Ct. 1761 (cita-

tions omitted). The Court then stated that, "[a]s to this category of cases, we may assume that the States have wide latitude to establish procedures not only to limit the number of judicial proceedings that may be entertained but also to determine whether to accord a taxpayer any standing at all." *Id.; see also Taylor v. Sturgell,* 553 U.S. 880, 902–03, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008).

The claims Appellants seek to assert challenge "public action that has only an indirect impact on [their] interests" within the meaning of *Richards. Richards* cited two examples of such "indirect impact" challenges. One was *Town of Tallassee v. State ex rel. Brunson,* 206 Ala. 169, 89 So. 514 (1921), in which an individual living within the boundaries of a newly-incorporated town filed a *quo warranto* proceeding to annul the town's incorporation. The petitioner alleged that the municipality's incorporation was invalid for two principal reasons: (1) the petition which was circulated to trigger the election on the town's formation was defective because it did not include an "accurate map or plat showing the boundaries or limits of the proposed municipal corporation"; and (2) "there does not appear anywhere of record that notice was given by publication or by posting as required by law to the effect that an election would be held" on the town's incorporation. *Id.* at 515.

---

levies. *The Streetcar District's proponents* commenced the Formation Lawsuit. Appellants do not argue that the proponents' petition in the Formation Lawsuit did not present the circuit court with a live, justiciable controversy. And it would appear that the Streetcar District's proponents had a real, present interest in obtaining adjudications that the District's formation, and its proposed funding mechanisms, were lawful and constitutional: by statute, judicial determinations of legality and constitutionality are a prerequisite to the elections which result in a district's

formation, and the imposition of the levies necessary to fund its operations. The Streetcar District's argument is that Appellants should have raised their legal objections to the District's proposed funding mechanisms *in the justiciable lawsuit commenced by the District's proponents,* in which Appellants had an unconditional statutory right to intervene. Whether Appellants could have filed a freestanding challenge to the District's funding mechanisms prior to the authorizing elections is irrelevant.

The petitioner in *Town of Tallassee,* a resident of the purported municipality, alleged that he was entitled to relief because the town's mayor and council were "levying and collecting taxes, passing ordinances and exercising all the rights, privileges, and franchises of a municipal corporation without having been duly incorporated." *Id.* Despite the petitioner's claim that he was subject to the levy and collection of taxes by an illegally-constituted entity, the Alabama Supreme Court held that the petitioner was barred from asserting his claims because another taxpayer had previously litigated a similar action. The Court reasoned that "[o]nly a public question was involved. Only the public interest [was] concerned, and if the mere fact of a change in the nominal party is to prevent the application of the rule of res judicata, there could then be no stability of decision upon questions of this character, which would always be open to attack." *Id.* at 517.

Appellants' claims in this case allege that the sales tax and special real-property assessments are unlawful based on the same sort of threshold objections, belonging to the public generally, as in *Town of Tallassee:* that the levies exceeded the governmental agency's statutory authority, and that the manner in which the levies were adopted was defective. According to *Richards,* these sorts of claims challenge actions which have "only an indirect impact on [a taxpayer's] interests"; as to such claims, *Richards* holds that the States have "wide latitude to establish procedures … to limit the number of judicial proceedings that may be entertained." 517 U.S. at 803, 116 S.Ct. 1761.

The Supreme Court of the United States has recognized a second relevant exception to the general rule against non-party preclusion:

> [I]n certain circumstances a special statutory scheme may expressly foreclose successive litigation by nonlitigants if the scheme is otherwise consistent with due process. Examples of such schemes include bankruptcy and probate proceedings, and quo warranto actions or other suits that, under the governing law, may be brought only on behalf of the public at large.

*Taylor,* 553 U.S. at 895, 128 S.Ct. 2161 (citing *Richards,* 517 U.S. at 804, 116 S.Ct. 1761, and *Martin v. Wilks,* 490 U.S. 755, 762 n. 2, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989)).

The Missouri Supreme Court has also recognized that the State has an interest in preventing successive taxpayer suits challenged particular governmental actions, and that preclusion principles may be applied more broadly with respect to such claims. For example, in *Powell v. City of Joplin,* 335 Mo. 562, 73 S.W.2d 408 (1934), the Supreme Court held that a resident of annexed land in Newton County was precluded from prosecuting an action seeking injunctive relief against the annexation, based on the fact that another resident of the annexed area had previously sought identical relief. After emphasizing that the plaintiffs in the two actions were similarly situated, the Court stated the following general principle:

> In the absence of fraud or collusion a judgment for or against a municipal corporation, county, town, school or irrigation district, or other local governmental agency or district, … is binding and conclusive on all residents, citizens and taxpayers in respect to matters adjudicated which are of general or public interest such as questions relating to public property, contracts or other obligations. The rule is frequently applied to judgments rendered in an action between certain residents or taxpayers and

a municipality, county or district or board or officer representing it, it being held that all other citizens and taxpayers similarly situated are represented in the litigation and bound by the judgment in the absence of fraud or collusion. The rule is applicable to persons who have notice of the suit and even to persons without actual notice of the suit.

*Id.* at 410 (citations and internal quotation marks omitted). The Court also held that this rule of preclusion applied to bar the second injunction action, even if the plaintiff in the second suit raised different legal arguments than in the first action:

It is a familiar Missouri rule that a judgment is conclusive not only as to questions which were raised, but as to every question which could have been raised. This principle should apply with special force to injunction proceedings, charged with a public interest as here. If we should rule that the judgment in the [earlier] Case dismissing the bill for injunction was not a bar to the bill for injunction in the instant case, we would open the doors to endless injunction suits, prosecuted by citizens of the annexed part of Newton county, and aimed at the avoidance of the effect of the annexation proceedings. This would be contrary to the axiom that it is to the interest of the state that litigation be ended. On May 21, 1929, the city council of Joplin adopted the annexation ordinance, subject to the approval of the people. On June 11, 1929, the ordinance received the assent of the citizens of Joplin and immediately became effective. Yet by litigation, a summary of which we have given, its validity is still in suspense. Successive injunction suits, even on new grounds, are not favored. The legal principle which precludes a second injunction would amount to very little if the law of which the litigant was ignorant at the time of the first injunc-

tion could serve as an excuse for urging in a second injunction the grounds that should have been urged in the first.

*Id.* at 412 (citations and internal quotation marks omitted).

Similarly, in *Sierk v. Reynolds,* 484 S.W.2d 675 (Mo.App.1972), this Court held that taxpayers were barred by *res judicata* from challenging special tax bills issued to them for the cost of constructing sanitary sewers, based on an earlier injunction action which sought to challenge the inclusion of the taxpayers' property in the district subject to taxation. The Court recited the principles from *Powell* quoted above, *id.* at 679–81, and stated that "it is obvious that the matter to be adjudicated here—the right of the City of Springfield to construct sanitary sewers and to impress a lien upon the property of the landowners thereby benefited—is a question of general public interest." *Id.* at 681. The Court also held that taxpayers were precluded even if their challenges to the special tax bills were not specifically litigated in the earlier injunction action: "It is . . . of no significance, so far as the last order of dismissal is concerned, that the issues tendered here were not specifically pleaded and tendered in the amended petition for injunction; they were questions which might have been raised, and the rule in this state is that a judgment is conclusive not only as to questions which were raised, but as to every question which could have been raised." *Id.* at 681.

The preclusion principles described in *Powell* have been repeated, and applied, in a number of later cases. *See, e.g., Norval v. Whitesell,* 605 S.W.2d 789, 791 (Mo. banc 1980); *Seibert v. City of Columbia,* 461 S.W.2d 808, 810–11 (Mo. banc 1970) ("It would be unthinkable in our system of jurisprudence to hold that each taxpayer of a municipality could bring a suit to attack

an annexation and that res judicata would not apply because there was not an identity of parties."); *Hixson v. Kansas City*, 361 Mo. 1211, 239 S.W.2d 341, 343–44 (1951) (city residents who filed suit to de-annex a recently annexed area were barred by *res judicata,* based on adjudication in earlier action which determined that annexation was lawful); *Drainage Dist. No. 1 Reformed, of Stoddard Cnty. v. Matthews,* 361 Mo. 286, 234 S.W.2d 567, 573–74 (1950) (taxpayers barred by *res judicata* from litigating validity of warrants issued by drainage district, where the issues had been litigated in a prior proceeding); *Knowlton v. Ripley Cnty. Mem'l Hosp.,* 743 S.W.2d 132, 135 (Mo. App.S.D.1988).

We recognize that *Powell* arises in a different context. In *Powell* and related cases, *a person or entity similarly situated to the present plaintiff* actually litigated an earlier challenge; the courts in these cases hold that the prior litigant "virtually represented" the interests of the present plaintiff, barring the second suit. Where prior litigation did not involve a challenger similarly situated to the current plaintiff, "virtual representation" has not been applied. *See, e.g., Seibert,* 461 S.W.2d at 811; *Knowlton,* 743 S.W.2d at 135–36.

In this case, it appears that no party similarly situated to the Appellants appeared in the Formation Lawsuit to challenge the legality of the Streetcar District or the proposed funding mechanisms; therefore, the "virtual representation" doctrine is not directly applicable here. Nevertheless, the principles stated in the "virtual representation" cases—that challenges like Appellants' raise "a question of general public interest," *Sierk,* 484 S.W.2d. at 680; that successive suits challenging governmental actions on such grounds are contrary to the public interest; and that preclusion principles may be applied more aggressively in this context—are fully applicable here. The principles announced and applied in *Powell* and related cases support the General Assembly's enactment of the provisions in the Missouri Transportation Development District Act designed to force an early, definitive resolution of threshold legal questions surrounding a proposed transportation district.[9]

Moreover, although this case may not involve prior litigation in which a party similarly situated to Appellants challenged the legality of the sales tax or real-property assessments, this case involves considerations absent from the "virtual representation" cases. Here, the legislature has enacted a detailed statutory scheme which is specifically designed to result in a full—and final—airing of all threshold objections to a transportation development district and its proposed funding; by contrast, the "virtual representation" doctrine is entirely judge-made. While they may not be similarly situated to area residents or property owners, the public-party respondents required to be named in the Formation Lawsuit are charged with raising any legal objections of which they are aware. In addition, the statute specifically requires notice to the public of the pendency of the action (notice we assume to be constitutional and adequate); in the "virtual representation" cases, by contrast, there is no requirement that *any* effort

---

9. *Taylor v. Sturgell,* 553 U.S. 880, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008), may call into question the continuing viability of the "virtual representation" doctrine, at least where a litigant seeks only individual relief, and where claim preclusion is based on judge-made rather than statutory principles. But as we explain in the text, this is not a "virtual representation" case. We rely on the "virtual representation" cases only for their discussion of the public policy favoring limitations on litigation challenging the validity of governmental actions or programs.

have been made to notify similarly situated parties of the pendency of the earlier action.

Because Appellants could have raised their challenges to the sales taxes and real-property assessments in the Formation Lawsuit, they are estopped from litigating them here.[10]

### Conclusion

The judgment of the circuit court is affirmed.

All concur.

---

10.  Given our disposition, we need not address the circuit court's alternative holding that some of Appellants' claims were subject to dismissal because they were "election contests" which were untimely under § 115.577.