In the Matter of: C.A.C. and Z.C., L.C. and J.C., Respondents,

v.

R.C. and J.C., Appellants.

No. WD 69923.

Missouri Court of Appeals, Western District.

March 31, 2009.

Bruce D. Enlow, St. Joseph, MO, for Appellants.

Thomas R. Summers, St. Joseph, MO, for Respondents.

Before: JAMES M. SMART, Presiding Judge, JOSEPH M. ELLIS, Judge and JAMES E. WELSH, Judge.

JOSEPH M. ELLIS, Judge.

Ron and Jewell Carter appeal from a judgment entered in the Circuit Court of Nodaway County terminating the parental rights of their daughter and granting a petition for the adoption of their grandchildren by Linda and Jeff Christensen. For the following reasons, the appeal is dismissed.

Tasha Carter ("Mother") and Donald A. Christensen ("Father") were involved in a relationship and had two children together: C.A.C., born February 5, 2002, and Z.E.C., born May 3, 2003. A judicial declaration of Father's paternity was eventually entered in 2004.

On October 25, 2004, the paternal grandparents, Linda and Jeff Christensen ("the Christensens"), were appointed as the children's guardians by the probate division of the Nodaway County circuit court, and the children began living with them in Maryville, Missouri. Subsequently, on March 29 and April 29, 2005, the circuit court conducted a hearing on the issues of custody and visitation of the children in the paternity action that resulted in the judicial declaration of Father's paternity.[1] Pursuant to a settlement agreement reached by and among all parties to the action, on July 12, 2005, the circuit court entered a judgment granting physical and legal custody of the children to the Christensens. The judgment ordered Mother to pay $380 per month in child support and Father to pay $396 per month. Mother was granted visitation every other weekend. The maternal grandparents, Ron and Jewell Carter ("the Carters"), who had intervened in the action, were awarded two weeks visitation over the summer and five days over Christmas break.

Mother did not take advantage of the visitation awarded to her on a regular basis and soon moved away to Anita, Iowa. Once in Iowa, Mother stopped exercising her visitation rights entirely but would be present for the visitation exercised by the Carters over the summer and Christmas break. Mother also called the children about once per month and sent cards and gifts on holidays and special occasions. From the date of the judgment, Mother failed to make any of her child support payments.

1. The record indicates and the parties confirmed during oral argument that this custody hearing and subsequent judgment occurred as part of the paternity action though this is not definitively established by the legal file. The record is clear that Father was the petitioner in the action; Mother was named as respondent; and that the paternal grandparents and guardians, the Christensens, intervened; as did the maternal grandparents, Appellants herein, the Carters; and Bonnie Bienz, a maternal aunt.

After a dispute arose between the Christensens and the Carters over the return of the children at the end of their summer visit with the Carters and Mother in 2006,[2] the Christensens refused to schedule a time over Christmas break for visitation and filed a motion to change the visitation provisions previously awarded in the paternity action. Christmas visitation did not occur that year.

On March 15, 2007, the Christensens voluntarily dismissed their motion to change visitation in the paternity action. On that same date, they filed a petition for adoption of the children in the Juvenile Division of the circuit court. The petition averred that Father was consenting to the adoption and that Mother's consent was not required under § 453.040 [3] because, for the six months immediately prior the filing of the petition, Mother had willfully abandoned the children and/or had willfully, substantially, or continuously neglected to provide the children with necessary care, support, and protection. The Juvenile Division subsequently granted a motion filed by the Carters to intervene in the action.

The petition for adoption was heard by the court on January 15 and May 28, 2008. Eventually, the Juvenile Division entered its judgment terminating the parental rights of Father and Mother and granting the Christensens' petition for adoption. The court found that Mother had "willfully abandoned the children and has willfully, substantially, and continuously neglected to provide the minor children with neces-

sary care, support, and protection" and that adoption of the children by the Christensens was in the best interests of the children. The Carters appeal from that judgment. Mother does not.

■ As an initial matter, we must address the Carters' standing to appeal the judgment, which has been challenged by the Christensens in a motion to dismiss the appeal. In order to have standing to appeal, pursuant to § 512.020, the Carters must have (1) been a party to the action and (2) been aggrieved by the decision of the trial court. *In the Interest of D.T.*, 248 S.W.3d 74, 77 (Mo.App. W.D.2008). The Christensens concede, as they must, that the Carters were parties to the action since they were granted leave to intervene by the trial court. They claim, however, that the Carters were not aggrieved by the Juvenile Division's termination of Mother's parental rights or its granting of the petition for adoption because the Carters had no rights that were affected by those rulings.

■ The manner in which the Carters claim to have been aggrieved by the Juvenile Division's judgment is based upon their belief that the judgment terminated the visitation rights granted to them by the circuit court in the paternity action. Certainly, the actual or purported reduction or elimination of the Carters' court-ordered visitation rights by the Juvenile Division's judgment would sufficiently aggrieve them to allow them standing to appeal such an order. *In re Estate of Juppi-*

---

**2.** Although not clearly evident from the record, the parties confirmed in oral argument that the Carters are residents of Virginia. Mother and the children traveled to Virginia for the Carters' 2006 summer visitation, as was specifically allowed by the court's prior order. Pursuant to that order, transportation related to visitation was to be provided by the Carters. Mother called the Christensens on the date of their return and said she would

not be able to return the children by 6 p.m. as planned because they had missed their connecting flight, gotten back to Kansas City late, and she was having difficulty obtaining a rental car that evening. As a result, the Christensens drove to pick up the children.

**3.** All statutory references are to RSMo 2000 unless otherwise noted.

*er,* 81 S.W.3d 699, 702 (Mo.App. E.D.2002); *Warman v. Warman,* 496 S.W.2d 286, 289 (Mo.App. W.D.1973). But the Juvenile Division's judgment made no mention whatsoever of the Carters' visitation rights granted by the circuit court in the paternity action, and the parties have not cited, nor has our independent research revealed, any authority for the proposition that the judgment of adoption automatically terminates visitation rights previously granted to a non-parent by another court of competent jurisdiction in a separate and distinct court case.

Thus, we can only conclude that the Carters are mistaken in their stated belief that the judgment of adoption automatically terminated their visitation rights.[4] The Missouri Legislature has adopted the Uniform Parentage Act, now codified in §§ 210.817 to 210.852. Section 210.829 declares that the circuit court shall have jurisdiction over all actions brought pursuant to the Act. Section 210.841 provides for entry of a judgment determining the existence or nonexistence of the parent and child relationship. Section 210.841.3 provides in pertinent part that "[t]he judgment ... may contain any other provision ... concerning: ... (2) The custody and guardianship of the child; (3) Visitation privileges with the child; ... (5) Any matter in the best interest of the child." It was pursuant to this section that the circuit court in the paternity action granted visitation rights to the Carters. There is nothing in § 210.841 that expressly states or even suggests by implication that a subsequent adoption judgment automatically terminates visitation granted to a non-parent pursuant to that section. The adoption statutes, likewise, contain no provision pertaining to automatic termination of visitation rights that have been afforded someone other than the parents in a separate legal proceeding. Accordingly, the judgment of adoption entered by the Juvenile Division did not terminate the Carters' visitation rights granted by the circuit court in the paternity action.

Our conclusion in this regard is reinforced by the provisions of § 452.402.6. Though not implicated in the case at bar, § 452.402 expressly grants grandparents the right to seek visitation under certain circumstances in custody cases pursuant to the Dissolution of Marriage Act, § 452.300–452.415. Subsection 6 of that statute provides that "[t]he right of a

---

4. We perceive that the confusion arises because the Carters are the maternal grandparents. Section 453.090.1 provides that "[w]hen a child is adopted ..., all legal relationships and all rights and duties between such child and his natural parents ... shall cease and determine. Such child shall thereafter be deemed ... the child of his parent or parents by adoption, as fully as though born to him or them in lawful wedlock." "Accordingly, in an adoption proceeding, ... the legal rights of a natural parent are completely abrogated. This statutory abrogation extends to grandparents-parents of the natural parent whose rights were taken away as well." *In re Adoption of R.S.,* 231 S.W.3d 826, 831 (Mo. App. S.D.2007) (internal citation and quotation omitted). While it seems clear that the Carters were awarded visitation in the paternity action because they were the maternal grandparents and had intervened in the action, under the terms of § 210.841, an award of visitation can be made to anyone and is not based on a statutory right of visitation granted to grandparents. Moreover, the paternity judgment awarding visitation, while noting that the Carters were the children's grandparents, did not find that it was in the children's best interests that they have visitation with the maternal grandparents, but rather that it was in the best interests of the children to have visitation with Ron and Jewell Carter. Thus, while the adoption abrogated the legal rights of the Carters as grandparents, that is to say such rights, if any, that they had as parents of the natural mother, the Carters' award of visitation in the paternity action was not a legal right they possessed in their capacity as grandparents.

grandparent to maintain visitation rights pursuant to this section *may* terminate upon the adoption of the child." (Emphasis added). Accordingly, § 452.402.6 expressly authorizes, but does not require, the termination of grandparent visitation rights granted pursuant to § 452.402 upon the adoption of a child. More importantly, however, § 452.402.6 implicitly requires a court order to accomplish termination of grandparent visitation upon adoption; the statute does not automatically terminate visitation rights. Thus, while the visitation granted to the Carters in this case was not pursuant to § 452.402 and was not expressly granted to them as grandparents, we perceive of no rational reason to presume visitation awarded pursuant to § 210.841 automatically terminates upon adoption when a specific decree is required to terminate grandparent visitation pursuant to § 452.402.

In this case, the Juvenile Division's adoption judgment did not purport to terminate the Carters' visitation rights granted by the circuit court in the paternity action. If it had, as noted *supra,* the Carters would clearly be aggrieved and would have a right to appeal the judgment. Since it did not, however, the Carters cannot have been aggrieved thereby.

The Carters have not identified, nor can we perceive, any other right they had related to the children that was affected by the judgment. Not having been aggrieved by the judgment, the Carters lack standing, and the appeal must be dismissed.

All concur.