**In re the FORMATION OF the NEOSHO TRANSPORTATION DEVELOPMENT DISTRICT,**

**City of Neosho, Petitioner–Appellant,**

**v.**

**Missouri Highways and Transportation Commission, Respondent– Respondent.**

**No. SD 32524.**

Missouri Court of Appeals, Southern District, Division Two.

Dec. 11, 2013.

Bryce D. Gamblin, St. Louis, MO, for Missouri Highways & Transp Comm'n.

Ryan A. Moehlman, St. Louis, MO, and David A. Steubel, Albuquerque, NM, for City of Neosho.

Mark C. Fels, Springfield, MO, for Neosho Transp. Dev. Dist.

DON E. BURRELL, J.

The City of Neosho ("City") appeals a December 2012 judgment denying City's motion to set aside the formation of (and subsequent actions taken by) the Neosho Transportation Development District ("District"), a transportation development district ("TDD"), which City had successfully petitioned the trial court to create in 2009. Although District had been formed exactly as City requested, City now asserts that District and its subsequent actions were unlawful because District was not formed as required under the Missouri Transportation Development District Act, section 238.200 *et. seq.* ("the TDD Act"), in that property owners (instead of registered voters residing within the boundaries of the proposed district) were treated as the appropriate qualified voters to determine whether District should be created and to participate in subsequent elections held by District.[1]

The trial court found that City's challenge to "the validity of [District]" was barred by the doctrine of laches as "City itself petitioned to create" District and "City knew or should have known of the matters about which it now complains from the time it first petitioned [the trial court] to create [District]."

City presents six points for resolution. The first four claim that the doctrine of laches cannot be applied where: (1) there is a challenge to a "facially void" judgment under Rule 74.06; (2) the trial court has "continuing jurisdiction pursuant to [section] 238.210.3"; (3) "fundamental liberty interests in voting" are at stake; and (4) the burden of proving laches was not satisfied because District and the Missouri Highways and Transportation Commission ("the Commission") were "not misled to harm[,]" "Respondents' own violation of law gave rise to or contributed to any detriment claimed," a short time had passed since the formation of District, and the applicable statute of limitation had not expired.

City's final two points assert: (5) the trial court erred in both an August 2012 interlocutory order and its subsequent December 2012 judgment "in not setting aside [District] Sales Tax" enacted by Dis-

---

1. References to section 238.200 are to RSMo 2000, references to all other sections are to RSMo Cum.Supp.2009. All rule references are to Missouri Court Rules (2013).

trict because it "was independently void and unlawful, irrespective of the void formation of [District]" as it "did not receive requisite 'qualified voter' approval required by [section] 238.235 ... and Mo. Const. Art. X, [section] 22" and laches was not "appropriately applied"; and (6) the trial court erred in refusing to set aside both "District's formation and [District] Sales Tax" as being "utterly void and unlawful" when formation and taxation "were not and could not be submitted to the registered voters to obtain the requisite voter approval required by [the] TDD Act[.]"[2] Finding that City was appropriately estopped from claiming that District had been improperly formed, we affirm.

### Applicable Principles of Review

■ We must affirm the decision of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." *Marre v. Reed,* 775 S.W.2d 951, 952 (Mo. banc 1989); Rule 84.13. "When reviewing a bench-tried case, the appellate court's primary concern is the correctness of the trial court's result, not the route taken to reach it." *City of Kansas City v. New York–Kansas Bldg. Associates, L.P.,* 96 S.W.3d 846, 853 (Mo.App. W.D.2002). Thus, if "the correct result was reached, the appellate court must affirm." *Id.*

### Facts and Procedural Background

In November 2009, City filed a "SECOND AMENDED PETITION" ("the petition") that sought the formation of District under the TDD Act. The petition named the Commission as the sole respondent. The petition included "a map illustrating" the boundaries of the proposed TDD and "[a] general description of the projects proposed ... by [the proposed TDD.]" City pleaded that "[t]he term of [the proposed TDD] shall be twenty years." The petition also stated:

> Since no registered voters reside within the proposed district boundaries[,] a list of property owners, with legal description and acreage of each owner of each recorded owner [sic] is also provided in ***Exhibit D,*** so the [trial] court has the information needed to call for a mail-in-ballot election under [s]ections [sic] 115 of the Missouri Revised Statutes. The Newton County Assessor has also prepared correspondence confirming ownership and [this] is also attached to Exhibit D certifying the ownership of each tract as per the official tax records of the County.

The petition requested a judgment:

A. Finding that the petition herein submitted is valid, correct[,] and in accordance with [section] 238.207 and such other sections of the [TDD Act] [s]ections 238.200 through 238.275[;]

B. [Ordering] a hearing on said petition pursuant to [s]ection 238.210[;]

C. Finding and certifying [that] the proposed funding method is neither illegal nor unconstitutional and is certified pursuant to [s]ection 238.210.2[;]

D. Ordering that a single question is posed to the qualified voters for the

---

2. District filed a motion to dismiss the appeal on the grounds that "City is not aggrieved by the judgment appealed from" and it "lacks standing to appeal[.]" That motion, previously taken with the case, is denied. City was a party to the original lawsuit, and the relief City sought in its motion to set aside the formation and actions of District was denied. *Cf. In re C.A.C.,* 282 S.W.3d 862, 864 (Mo. App. W.D.2009) (to have standing, an appellant must have "been a party to the action" and have "been aggrieved by the decision of the trial court").

creation, development and proposed funding by mail-in-ballot in accordance with [s]ection 238.216 subsection (2) of subsection 1[;]

E. Finding and certifying that the [proposed TDD] is not an undue burden on the owners of real property within [the proposed TDD] and is not unjust or unreasonable;

F. Finding that no registered voters reside within [the proposed TDD] and the owners of real property within [the proposed TDD] is [sic] a "qualified voter" pursuant to the [TDD] Act;

G. Ordering a meeting of the real property owners within [the proposed TDD] within 30 days of creation in accordance with [s]ection 238.220 subsection 2 to elect the board members of [the proposed TDD].

In its December 2009 answer, the Commission admitted only its role as a necessary party under the TDD Act. It then stated that if City "can prove the allegations contained in the [petition]," it knew of no reason why City's pleading would be defective, and it knew of no reason why there would be anything illegal or unconstitutional in regard to the proposed TDD or its "proposed method of funding[.]" The Commission also stated that it was not opposed to the creation of District. In January 2010, the trial court "certifie[d] the petition for voter approval." In April 2010, the trial court issued an Order of Publication that required weekly notice of the petition to be provided via newspaper publication in Newton County for four consecutive weeks.

In response to City's petition, the trial court entered judgment in September 2010, finding that "[n]o objections to the [p]etition, timely or otherwise, have been filed" and "[t]he [proposed TDD] is neither illegal nor unconstitutional[.]" The judgment certified "the question of [the proposed TDD]'s formation" "for qualified voter approval." The judgment found that the funding mechanism—"the imposition of a sales tax in the amount of one half of one percent"—was "neither illegal nor unconstitutional" and certified "the question of imposing [said] tax" "for qualified voter approval." The judgment found that "[t]here [we]re no registered voters residing in the boundaries of [the proposed TDD]." The judgment therefore ordered that the " 'qualified voters' " were "the owners of real property within [the proposed TDD]." The judgment went on to specify the procedures to be used to receive applications for ballots, as well as how to distribute and count them. One vote per acre, with fractional voting, was to be permitted. Of the qualifying votes returned, 283.70 votes/acres were in favor and 13.20 votes/acres were opposed to the formation of the proposed TDD.

In February 2011, "in response to [City's] Motion for entry of Judgment and Order Creating a [TDD]" and "with the consent of all the parties[,]" the trial court issued its judgment establishing District. In June 2011, City moved for a judgment and order calling an election on the sales tax which had been approved by "[t]he Board of Directors of [District.]" This motion again stated that "[t]here are no registered voters residing in the boundaries of [District,]" and it sought an order declaring that "the 'qualified voters' are the owners of real property within [District]." The motion requested "that each qualified voter shall have one vote per acre of real property owned within [District]" and "[f]ractional voting shall be permitted."

The trial court entered a June 2011 judgment that certified the sales tax issue "for qualified voter approval[,]" found the

" 'qualified voters' " to be "the owners of real property within [District,]" and specified the procedures to be used in conducting the election, including that voting would be by acre with fractional voting permitted. Of the qualifying votes cast, 260.05 votes/acres were in favor of the tax and 14.04 votes/acres were opposed.

In June 2012, District filed a "**MOTION FOR ORDER NUNC PRO TUNC TO CORRECT RECORD PURSUANT TO RULE 74.06(a)[.]**" The motion asserted that "[i]n April, 2012, it was discovered that the Newton County Clerk's voter registration records showed at least one voter was registered at an address within the boundaries of [District] prior to the date the election was held to create [District.]" The motion attributed this fact to "inadvertence or oversight" in that such was "contrary to the clear, unambiguous intention of [City] and the action of the [trial c]ourt pursuant to its [September 2010 judgment] that [District] included no registered voters and that 'qualified voters' within [District] be only the owners of real property within [District]." District sought "correction" of the legal description and map included in the petition, and it

asked that the trial court's September 2010 and February 2011 judgments be changed to reflect "only properties in which no registered voters reside[.]" The trial court granted the motion, entering a June 2012 judgment that stated the trial court had been advised by counsel for the parties that "City and [District] both consent to the [trial c]ourt granting the relief sought" in District's motion.

In August 2012, City filed a "**MOTION TO SET ASIDE TRANSPORTATION DEVELOPMENT DISTRICT ACTIONS AND ELECTIONS AND OTHER RELIEF**" ("motion to set aside District actions").[3] The motion alleged that District's election of successor directors in July 2012 was defective as to the notice of the election and the participation of the Commission in the voting, and it requested that the results of the election be set aside.[4]

The motion to set aside District actions next maintained that *"ALL OTHER ACTS OF [DISTRICT] MUST ALSO BE INVALIDATED"* because District had not been formed as permitted under section 238.207.2, for a petition by "a single local transportation authority[.]"[5] City

---

3. City also filed a "**MOTION FOR PARTIAL IMMEDIATE RELIEF PURSUANT TO CONTINUING ADMINISTRATIVE AUTHORITY[.]**" This motion sought "an administrative order temporarily staying the body currently acting as the Board of Directors of [District] from" taking "[n]ew [a]ctions" such as expending or encumbering money until the motion to set aside was ruled.

4. In making this claim, City also incorporated a "**VERIFIED PETITION FOR ELECTION CONTEST AND OTHER RELIEF**" that had been filed as a separate case earlier in August 2012, stating that City owned property within District and "was a qualified voter in the July 16 Directors Election[.]" This petition alleged that there was improper notice of that election and that "[t]he inclusion of the [Commission's] votes and other consideration of [the Commission's] highways, streets[,] and

rights-of-way as property qualifying for voting ... was in violation of state law[.]" One of the remedies City sought was "a new election for the office of Director of District[.]"

5. The motion's prayer for relief stated:

WHEREFORE, [City] respectfully requests that [the trial court] take action pursuant to its continuing jurisdiction over [District] pursuant to [s]ection 238.210 ... and ... Rule 74.06(b)(4) among other authority, and grant the [motion to set aside District actions] and enter its Judgment and Order providing as follows:

A. The July 16 Director Election was invalid for the reasons set forth in the Verified Petition.

B. That the Mail–In Organization Election was void *ab initio* and of no legal effect whatsoever, and as a result, [Dis-

maintained that in such circumstances "property owners within a TDD cannot be 'qualified voters' in TDDs formed under [s]ubsection 2 of [s]ection 238.207" and holding an election for property owners in order to form District was "void *ab initio*, and of no effect whatsoever." City reasoned that all subsequent elections held by District were also invalid because District's creation had been invalid and District relied on votes cast by property owners who did not reside in District. The motion to set aside District actions did not identify which judgments entered by the trial court should be set aside.

At an August 2012 hearing, co-counsel for the Commission announced that the parties had reached an agreement for the trial court to enter an order addressing certain issues, and co-counsel for City add-ed that the parties "would then try work out additional problems[.]" The resulting August 2012 order, acknowledged by the parties as to form, set aside the July 2012 election results and ordered a new election "with newspaper notice complying with [section] 238.220[.]" The parties were ordered "prior to the [n]ew [e]lection [to] proceed to take action to reflect the original intention of the parties that all [the Commission's] property be excluded from [District] for [the] purposes of voting or otherwise." With specified exceptions, the August 2012 order also directed District to cease expending or encumbering money and stayed District from entering into contracts and agreements "until such time as [the trial court] enter[ed] further ruling on [City's motion to set aside District actions.]"

trict] has not yet been lawfully organized as required under the TDD Act;

C. That all subsequent elections and actions of [District], including but not limited to the Sale[s] Tax Election, the election of the initial District Board of Directors, the election of the Successor Director, and the authorization of contracts were void *ab initio* and of no legal effect whatsoever, and as a result such actions, including the one-half percent sales tax currently being imposed within [District], are invalid;

D. Enter an order barring collection of the one-half percent sales tax currently being imposed within [District] and declaring such tax null and void and all contracts entered into by [District] null and void;

E. Enter an order immediately and permanently ordering the body currently acting as [District] Board of Directors, and each and every person holding or purporting to hold office as a Director of such Board, and all employees, officers and agents thereof, to immediately cease further expenditures, appropriations, transfers, contracts or other encumbrances of tax moneys collected in the possession of [District] ("New Actions");

F. Enter an order immediately and permanently barring the body currently act-ing as District Board of Directors, and each and every person holding or purporting to hold office as a Director of such Board, and all employees, officers and agents thereof, to immediately cease from continuing to perform under any contract or agreement previously executed or entered into by [District] Board of Directors on behalf of [District], except to take all necessary actions to wind down the affairs of [District], including informing the Missouri Department of Revenue and the Missouri State Auditor of the order by providing such a copy of the order and instructing such to stop collection of the one-half percent sales tax currently being imposed within [District];

G. Enter an order reopening the hearing held by [the trial court] pursuant to [s]ection 238.210 ... to determine if the "petition is defective or the proposed district is illegal or unconstitutional," at which time the [trial c]ourt must determine that District as currently bounded contains no "qualified voters" to which a valid election on the organization of [District] may be submitted, and allowing [City] to voluntarily dismiss its petition for formation of [District] pursuant to Rule 67.02(b).

District and the Commission filed suggestions in opposition to the motion to set aside District actions stating, *inter alia,* that the Commission had already allocated certain "cost share funds . . . in the Cooperative and Cost Share Agreement between [District] and [the Commission]" and had already obligated certain funds "on engineering design work[.]". District and the Commission asserted that the doctrine of laches compelled the trial court to dismiss the motion to set aside District actions because City filed said motion after it had petitioned for District's creation and later "decided that a matter that it should have known of from the inception of these proceedings is fatal to [District]'s existence."

A hearing was held in November 2012 on the assertion that City's claims were barred by the doctrine of laches. The trial court advised the parties that "the issues of merit" would be addressed only if it found that laches did not apply. The Commission's Exhibit A, which detailed amounts paid and additional amounts obligated by the Commission for District projects totaling $1,406,163, was received into evidence. At the end of the hearing, the trial court found that "the doctrine of laches is highly appropriate to be applied in this case[.]"

The trial court's subsequent December 2012 judgment found "that the factual and legal basis for [City]'s present claim that [District] is invalid and unlawful existed and was known, or should have been known, to [City] when it filed its petition to create [District] in 2009." City was found to have "repeatedly and consistently represented to [the trial court] prior to August 21, 2012, that it agreed with and approved

of [District]'s validity."[6] The trial court further found that

> [District] has made a compelling showing of foreseeable detriment not only to itself but, more importantly, to the community in the event the Court were to grant [City] the relief it seeks and [District]'s highway and street improvement projects were not completed upon the terms set forth in [District]'s Cost–Share Agreement with [the Commission]. In addition, [the Commission] has incurred costs and obligations in excess of $1,400,000.00 under the Cost[-]Share Agreement in reliance on the validity of [District], and it would suffer substantial detriment if the [trial c]ourt were to grant [City]'s requested relief.

The trial court found that City "has failed to show foreseeable detriment to it or the public if [the trial court] were not to grant it the relief it seeks" as its allegations concerning possible "future taxpayer lawsuits" were "speculative[.]" The judgment also vacated the "Limiting Order entered against [District]" the trial court had issued in August 2012. This appeal timely followed the entry of the December 2012 judgment.

### Analysis

*Point I—Applicability of Rule 74.06*

■ City's first point contends that "laches does not apply, under Rule 74.06, to preclude · challenges to facially void judgments creating political subdivisions or void actions of such entities[.]" City then argues that "[a] 'void' judgment is subject to attack at any time pursuant to Rule 74.06" and " 'principles of equity such as laches or estoppel cannot act as a bar to

---

**6.** The trial court also noted "that [City] expressly reaffirmed its belief in [District]'s validity as recently as June 25, 2012, when it consented to entry by [the trial court] of a declaratory judgment in [another pending lawsuit], which recognized [District]'s validity."

an attack upon a void judgment[,]' " quoting *Taylor v. Taylor,* 47 S.W.3d 377, 389 (Mo.App. W.D.2001).[7]

Ordinarily, we review the circuit court's ruling on a motion to set aside a judgment under Rule 74.06 for an abuse of discretion. *In re Marriage of Hendrix,* 183 S.W.3d 582, 587 (Mo. banc 2006). However, whether a judgment should be vacated because it is void is a question of law that we review *de novo;* we give no deference to the circuit court's decision.

*Kerth v. Polestar Entm't,* 325 S.W.3d 373, 378 (Mo.App. E.D.2010).

Here, City's point fails to recognize that the motion to set aside District actions was not directed at any particular judgment entered by the trial court. Instead, it attacked a host of actions taken by District, maintaining that the **"ELECTION OF SUCCESSOR DIRECTORS MUST BE SET ASIDE"** and insisting that **"ALL OTHER ACTS OF [DISTRICT] MUST ALSO BE INVALIDATED[.]"** In its prayer for relief, the motion addressed seven different items, none of which included the setting aside of any judgment entered by the trial court. As a result, City has failed to demonstrate that it was entitled to relief under Rule 74.06(b)(4). Point I fails.

*Points II—VI*

*City is Estopped from Challenging What It Once Promoted*

■ City's remaining points all challenge the trial court's reliance on laches as a basis for denying the motion to set aside District actions. Each of these points asserts, for various reasons, that the formation and actions of District were void *ab initio,* and we address them as a group.

■ The trial court's judgment spoke in terms of laches.[8] City disputes that laches is applicable and, if so, that its elements were satisfied. We do not reach the merits of those arguments because they are irrelevant if the trial court ultimately reached the correct result. *See New York–Kansas Bldg. Associates, L.P.,* 96

---

7. The concept of a void judgment is "narrowly restricted" under Rule 74.06. *Baxi v. United Techs. Auto.,* 122 S.W.3d 92, 95 (Mo.App. E.D.2003). This restriction is necessary to protect the strong public policy interest in the finality of judgments. *See Platt v. Platt,* 815 S.W.2d 82, 84 (Mo.App. E.D. 1991). A judgment is not void merely because it is erroneous. *Baxi,* 122 S.W.3d at 96. In cases where personal and subject matter jurisdiction are established, a judgment should not be set aside unless the court "acted in such a way as to deprive the *movant* of due process." [*State ex rel. Koster v.*] *Walls,* 313 S.W.3d [143,] 145[ (Mo.App. W.D.2010) ](quoting [*Franken v.*] *Franken,* 191 S.W.3d [700,] 702[ (Mo.App. W.D.2006) ] (emphasis added)). Thus, judgments have been declared void for lack of due process when litigants have been denied notice of critical proceedings or were subject to involuntary waiver of claims. [*Taylor* ], 47 S. W.3d [at 389– 90]( [j]udgment terminating parental rights was void because statutory procedures were not followed and result of proceeding was involuntary waiver of father's inheritance rights)[.] *Forsyth Fin. Grp., LLC v. Hayes,* 351 S.W.3d 738, 740–41 (Mo.App. W.D.2011).

8. "Laches is an equitable doctrine not applicable to actions at law." *G.M. Morris Boat Co. v. Bishop,* 631 S.W.2d 84, 88 (Mo.App. S.D.1982). "Because estoppel and waiver are substantive defenses that reach all remedies, both legal and equitable, they are applicable 'at law.' " Dan B. Dobbs, Law of Remedies Section 2.4(4) (2d ed.1993); *see also State ex rel City of Monett v. Lawrence Cnty.* 407 S.W.3d 635, 640 (Mo.App. S.D.2013). In *City of Monett,* the court also discussed how the county's actions could satisfy some of the elements of laches such that the trial court did not err in rejecting the county's challenge based on "laches and estoppel." 407 S.W.3d at 641.

S.W.3d at 853. Assuming, without deciding, that the equitable doctrine of laches did not support the trial court's denial of City's motion to set aside District actions, the trial court nonetheless reached the correct result because City was estopped from asserting as invalid actions it previously asked the trial court to approve.

■ When a party attacks the effect of the very judgment it once sought,

> [w]hether the judgment be referred to as res judicata, or whether the result be termed simply 'estoppel by judgment,' or waiver, the failure to tender an issue which is available prior to rendition of the judgment precludes its being raised thereafter in a proceeding between the same parties involving the same thing.

*Winthrop Sales Corp. v. Shelton*, 389 S.W.2d 70, 73 (Mo.App. Spfld.D.1965).

City's petition took the position that "no registered voters reside within the proposed [TDD] boundaries[,]" and it also provided information on the property owners in the [proposed TDD]. It then asked the trial court to find that the owners of real property within [the proposed TDD] were the "qualified voters" under the TDD Act. The February 2011 judgment that formed District came in response to City's motion for judgment, and it was entered with the consent of all parties involved. In June 2011, City was the party that requested a judgment calling for an election on the sales tax. That request again represented that there were no registered voters residing within District, and that it was therefore appropriate for the trial court to find and order that the qualified voters were the persons who owned real property within the boundaries of District. The trial court entered its judgment certifying the sales tax issue "for qualified voter approval" just as City had requested. In regard to the initial formation of District and the subsequent sales tax election,

City received exactly what it assured the trial court was appropriate, and those actions obligated the Commission to pay $1,406,163 on District projects.

The result here is in accord with a recent opinion issued by the western district of our court which holds that a challenge to the formation of a TDD (and the proper form of its elections) must be brought at the appropriate time. In *KCAF Investors, L.L.C. v. Kansas City Downtown Streetcar Transp. Dev. Dist.*, 414 S.W.3d 470, 480–81 (Mo.App. W.D. 2013) (reh'g/transfer denied Oct. 1, 2013; app. for transfer filed Oct. 13, 2013), the Western District concluded that the plaintiffs "*could have*, and *should have*, raised their claims in the Formation Lawsuit" that established the TDD. For purposes of that TDD, the plaintiffs argued, *inter alia*, that the property owners within the district had been denied the right to vote on the district—which involved special assessments on property located within the district—and that the district was unlawful because its boundaries overlapped those of an existing TDD. *Id.* at 473. The court reasoned that the TDD Act gave the plaintiffs "the authority to intervene as of right in the Formation Lawsuit[,]" *id.* at 480, and it presumed, based upon its decision regarding another point on appeal, that the plaintiffs had notice of that right. *Id.* at 482. Even though the TDD Act did not specifically provide for the estoppel or waiver of claims, the Western District found that the TDD

> Act's structure and wording clearly indicate that the legislature intended that the circuit court's ruling on the legality of the proposed transportation development district, and its funding mechanisms, would be definitive, and that any person or entity objecting to the pro-

posed district would voice their objections during the formation litigation itself.

*Id.* at 483. As a result, it held that the plaintiffs—who could have intervened as a matter of right under the TDD Act and did not do so—were precluded from raising their subsequent claims. *Id.* at 487–88.

City's reply brief argues that *KCAF Investors* "is nothing more than the generic application of barring collateral attack where there is no void judgment and no facial violation of law alleged." City argues that the case does not construe the "'continuing jurisdiction'" of the trial court as set out in section 238.210.3. Of course, the language in section 238.210.3 (that the trial court has "continuing jurisdiction to enter such orders as are required for the administration of the district after its formation") in no way prevents a trial court from finding that a party is precluded from challenging an issue previously adjudicated in conformity with that party's request. If non-party property owners were appropriately precluded from making untimely claims in *KCAF Investors*, the very party that brought the action to form the TDD should certainly be precluded from later asserting that the formation was invalid.

 The trial court correctly refused to reach the merits of City's claim that the formation of District and its subsequent sales tax were "void and unlawful[.]"[9] *Cf.*

---

9. We do observe that insofar as Point V asserts a violation of Article X, section 22 of the Missouri Constitution, such an argument was not presented to the trial court in the motion to set aside District actions. Further, City's memorandum in support of the motion to set aside District actions does not cite Article X, section 22. An issue that was not raised to the trial court is not preserved for review by this court. *City of Branson v. Hotels.com, LP,*

*State ex rel. City of Monett,* 407 S.W.3d at 641 (holding that based on "laches and estoppel[,]" the court "need not review" the county's claim that the tax increment financing districts were not validly enacted). City's points are denied, and the judgment of the trial court is affirmed.

GARY W. LYNCH, J., MARY W. SHEFFIELD, J. concur.

396 S.W.3d 378, 385 (Mo.App. S.D.2013). We also observe that to the extent that both points V and VI challenge the trial court's August 2012 order, that order was entered upon the agreement of the parties. "A judgment, order, or decree entered by consent of the parties is not a judicial determination of rights, but a recital of an agreement and cannot be appealed." *Henze v. Schallert,* 92 S.W.3d 317, 319 (Mo.App. E.D.2002).