

# Missouri Court of Appeals
## Southern District

### In Division

DEANNA (HALEY) BROWN,        )
                               )
        Petitioner-Respondent,     )
                               )
v.                               )     No. SD37223
                               )     Filed:  March 18, 2024
JOHN PATRICK HALEY,       )
                               )
        Respondent-Appellant.    )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable James Ronald Carrier, Associate Circuit Judge

### AFFIRMED

John Haley (Father) appeals from a judgment of modification entered in a dissolution action on June 11, 2021.[1]  This judgment resolved many pending issues between Father and his former spouse, Deanna Haley Brown (Mother).  Only one of the issues is relevant in this appeal.  In decretal paragraph XVII of the modification judgment, Father was ordered to pay Mother "$141,283.52 for payment of medical expenses, expenses for extracurricular activities and college expenses."  In Point 1, Father contends

---

[1] On October 15, 2021, the trial court entered a judgment of modification *nunc pro tunc*, which corrected a typographical error in paragraph 36 of the June 2021 modification judgment.

the trial court misapplied the law by enforcing an open-ended and vague support judgment because Father was required to pay half of the medical, extracurricular, and college expenses "without limitation as to dollar amount or otherwise." In Point 2, Father contends the trial court's award of post-secondary education expenses to Mother was against the weight of the evidence. Finding no merit in either point, we affirm.

## Factual and Procedural Background

The marriage between Father and Mother was dissolved on May 21, 2008, in a judgment of dissolution filed in the Circuit Court of Cape Girardeau County, Missouri (hereinafter, the 2008 judgment).[2] The parties had three daughters: M.H., born in March 2001; S.T.H., born in June 2002; and G.E.H., born in May 2004. The matter was submitted by the parties on Affidavits for Judgment. Father and Mother were granted joint legal and joint physical custody of their three daughters. The 2008 judgment made Father and Mother each liable for 50% of the uninsured medical or dental expenses of the children. This judgment also stated: "The parties shall share equally all expenses for extracurricular activities of the children such as private lessons, sports activities, etc., including sign up costs as well as uniforms, etc." No post-trial motions were filed by either party challenging this language in the judgment, and no one appealed from the judgment. Father paid $250 toward his share of such expenses in 2012, but that still left an arrearage. On April 24, 2013, Father sent Mother a check for $2,500 with a notation that it was for: "All the medical expenses." On advice of counsel, Mother did not cash the check because it might have foreclosed her right to collect a larger and more accurate amount.

---

[2] Father's current counsel only represented him in this appeal. At all prior times, Father was represented by different counsel.

On February 6, 2014, a judgment of modification was entered by the Circuit Court of Greene County, Missouri (hereinafter, the 2014 judgment). Mother was granted sole legal custody of the three girls, but Father and Mother were granted joint physical custody of their daughters. The trial court adopted its own parenting plan, which was attached to and incorporated into the 2014 judgment. The court made a finding that "the issue of extraordinary expenses should be addressed as set forth on page 6 paragraph c of the court's parenting plan[.]" In the "Support" portion of the parenting plan, Paragraph A addressed education expenses. This paragraph required Father and Mother to each pay "50% of the cost each year for each child attending private school, post-secondary college, university, or vocational/technical school, state or private[.]" This obligation to pay was subject to several limitations, including one which stated "[t]he maximum cost which the parties shall be responsible for in any given school year will be their respective portion of [the] cost for tuition, fees, books and dormitory costs for room and board at the University of Missouri-Columbia regardless of what institution the child attends." Regarding extraordinary expenses, Paragraph C stated, in relevant part, that "Father and Mother shall each pay 50% of the minor children's extracurricular activities." Paragraph F required Father and Mother to be responsible for "one-half of the costs associated with all medical, dental, deductibles, orthodontic, psychological or psychiatric care for the minor children not covered by insurance." The judgment also decided that Father owed Mother $5,994.12 for child support and expenses incurred through March 31, 2012, and noted that those expenses "necessarily would have continued" beyond that date. Father was ordered to pay $100 per month to Mother toward that debt. After entry of the 2014 judgment, neither party filed a motion to amend the judgment. No one appealed from that judgment. On May 29, 2014, Father paid $1,753.80 toward his share of the aforementioned expenses.

3

On October 29, 2015, Father filed a motion to modify the 2014 judgment as to child custody and child support. On December 17, 2015, Mother filed a counter-motion to modify child custody and support. In relevant part, this motion alleged that Father "was ordered to pay one-half of private schooling, extraordinary expenses and health care costs and has not done so[.]" Mother alleged that, as of the date of the motion, Father owed $44,865.49. On May 1, 2018, Father requested leave to file a first-amended motion to modify. The trial court sustained the motion and allowed the amended motion to be filed on May 24, 2018. On June 8, 2018, Mother filed an amended counter-motion. In Count 2 of this motion, Mother reiterated that Father had failed to pay one-half of private schooling, extraordinary expenses and healthcare costs, as required by the 2014 judgment. Mother alleged that, as of the date of that motion, Father owed $90,485.46. Mother requested that Father be held in contempt.

Trial on the competing motions was held on five days between January 9, 2019, and April 20, 2021. The record was held open for some financial information to be provided by Father. The evidence closed on May 4, 2021, and the case was taken under advisement. Insofar as relevant to the issue on appeal, the following testimony was presented at trial.

The trial court took judicial notice of the entire file, which included both the 2008 and 2014 judgments. According to those judgments, Father was obligated to pay one-half of the expenses for education, extracurricular activities, and uninsured medical, dental, deductibles, orthodontic, psychological or psychiatric care for the minor children. Father testified that he had made three payments for these expenses since 2012:

> Q. As I understand it, but for the expenses, the 1,750 and the 250 that you sent to [Mother] that she cashed, along with the $2,500 check that you sent her that she didn't cash, over the course of nine years – or almost nine years,

4

that's been the only expenses that you've reimbursed her for, for these girls; would that be correct?

A. Yes.

Mother testified that Father did not pay his one-half share of the cost of such expenses, which included college costs for M.H. and S.T.H. at the University of Arkansas and John Brown University, respectively, as well as medical, dental, vision, music, dance, gymnastics, arts, and summer camp expenses. With respect to college costs, Mother testified that:

1. The 2014 judgment used the cost of college at the University of Missouri-Columbia as the benchmark, with each parent paying half of that amount.

2. The cost per year to attend the University of Missouri-Columbia was $30,252.

3. One daughter went to the University of Arkansas business school, which cost $27,826 per year to attend.

4. The other daughter went to John Brown University, which cost $23,078 per year to attend.

Mother's Exhibit 81-A showed that Father's unpaid half of all of the foregoing expenses (through April 11, 2021) totaled $142,567.24. The college expenses alone were summarized in Mother's Exhibit 81-B. Aside from the three payments Father mentioned in his testimony, he had not paid anything else toward his one-half share of those expenses during the prior nine years.

On June 11, 2021, the trial court issued its judgment of modification. The trial court noted that it treated Mother's contempt motion as requesting declaratory relief by determining the sum certain owed to Mother by Father. In relevant part, the court made the following findings in the judgment:

5

14.   The Court has prepared its own parenting plan which is attached hereto as Exhibit 1.  The Court finds that Court's Exhibit 1 is in the best interest of the minor children.

….

34.   Having subtracted $1,283.72 from the total amount claimed by [Mother] for medical expenses and expenses for extracurricular activities the Court finds that [Father] owes [Mother] $141,283.52.

35.   The above referenced judgment amount includes college expenses incurred on behalf of the two older children.  The Court finds that the college expenses requested by [Mother] do not exceed the maximum amount payable under the Court's prior judgment.

Decretal paragraph XVII entered judgment in favor of Mother and against Father "in the amount of $141,283.52 for payment of medical expenses, expenses for extracurricular activities and college expenses."  Court's Exhibit 1 contained the following relevant paragraphs:

N.  MEDICAL, DENTAL AND VISION EXPENSES.  Mother and Father shall each pay 50% of all expenses of co-pays and deductibles not paid through insurance or health plan coverage for medical, dental, orthodontic, mental-health and vision care of the minor children during the periods in which the children are not emancipated.  These obligations shall continue until there is no further duty to support said children.

O.  COLLEGE EXPENSES.  Father and Mother shall each pay 50% of the minor children's college expenses.  The "costs" each year for the children to attend a post-secondary college, university, or vocational/technical school, state or private, subject to the following limitations:

1. "Cost["] shall include tuition, fees, books, dormitory cost for room and board.  It does not include room and board while residing with either parent.

2. The "cost" shall be the actual cost of attending the institution, i.e. if the child receives a scholarship, grant, or other assistance, which reduces the cost of attending the institution, the "cost" shall be reduced by this amount, but shall not be reduced by any loan, which must be repaid.

3. The maximum cost will be the actual cost for tuition, fees, books, and dormitory costs for room and board for an in-state student at

University of Missouri-Columbia, regardless of the institution the children attend.

4. The parents shall not be responsible for paying for more than 10 semesters at a college or university.

P. <u>EXTRACURRICULAR ACTIVITIES</u>: The Court recognizes that extracurricular activities are important to a child's social and educational development. The parties shall cooperate with each other and make every effort to allow the minor children to participate in extracurricular activities. Mother shall pay 50% and Father shall pay 50% of the cost of extracurricular activities. Father's financial obligation for payment of extracurricular activities is capped at $250.00 per month. Father shall be allowed to attend such events should he so desire.

In post-trial motions for rehearing and to amend the judgment, Father argued for the first time that the trial court erred by "determining that Father was required to pay extraordinary and extracurricular activity expenses that are uncollectible under Missouri law as those expenses did not have limitations or a payment cap." Those motions were denied, and this appeal followed.

**Standard of Review**

A judgment is presumed correct, and the party challenging the judgment bears the burden of proving it erroneous. ***Brackney v. Walker***, 670 S.W.3d 455, 458 (Mo. App. 2023). In this court-tried case, our review is governed by Rule 84.13(d) and ***Murphy v. Carron***, 536 S.W.2d 30, 31-32 (Mo. banc 1976).[3] We are required to affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. ***Ivie v. Smith***, 439 S.W.3d 189, 198-99 (Mo. banc 2014). "We review questions of law decided in a court-tried case *de novo*." ***O'Connell v. Deering***, 631 S.W.3d 649, 652 (Mo. App. 2021).

---

[3] All rule references are to Missouri Court Rules (2021).

In addition, an issue presented on appeal must be preserved for appellate review. *In re Marriage of Adams*, 414 S.W.3d 29, 37 (Mo. App. 2013). Issues relating to the form or language of a judgment must have been presented in a Rule 78.07(c) motion to amend the judgment in order to be preserved for appeal. *Adams*, 414 S.W.3d at 37.

### Discussion and Decision

*Point 1*

In Father's first point, he contends the trial court erred by ordering Father to pay $141,283.52 in educational, extracurricular, and uninsured healthcare expenses. Father argues that the specific terms in the 2014 judgment relating to these expenses are unenforceable because there is no limitation as to dollar amount or otherwise. As support for this argument, Father cites *Echele v. Echele*, 782 S.W.2d 430 (Mo. App. 1989); *Fulton v. Adams*, 924 S.W.2d 548 (Mo. App. 1996); and *Pratt v. Ferber*, 335 S.W.3d 90 (Mo. App. 2011). Therefore, we must examine these decisions to see what principles they authoritatively espouse.

In *Echele*, the original dissolution decree was issued in November 1985. In the spring of 1988, cross-motions to modify were filed. The wife's motion asked that the husband be responsible for the payment of reasonable college expenses for both sons. *Echele*, 782 S.W.2d at 432.[4] In the January 1989 modification decree, the trial court ordered the husband to pay one-half of the cost of a vocational or technical school, one-half of the cost of post-secondary education at a state supported college or university, or one-third of the cost of post-secondary education at a private college or university. The

---

[4] The *Echele* court's analysis of the attorney-fee issue was abrogated in *Rallo v. Rallo*, 477 S.W.3d 29, 44 (Mo. App. 2015), but that has no bearing on the college-expense matter under consideration here.

husband appealed from the judgment.  *Id*. at 433.  On appeal, the husband argued that the trial court erred by ordering him to pay any post-secondary educational expenses because those provisions of the judgment were void and unenforceable.  *Id*.  The eastern district of this Court agreed:

> We find this particular order too uncertain and vague to be enforceable.  The order allows the children to attend any vocational/technical school, or any state supported college or university, and the husband is required to pay one-half of the costs of tuition, books, and room and board.  Or the children can choose to attend a private college or university, and [the husband] is then responsible for one-third the costs.  Presumably, [the wife] in collaboration with the children, has the choice to select any particular vocational, technical, state or private institution.  We have no quarrel with the children and [the wife] having that right.  The difficulty with the trial court's order is that it is too indefinite and uncertain.

*Id*. at 436-37.  Therefore, the appellate court reversed this portion of the judgment and remanded for further proceedings.

In *Fulton*, the first-amended dissolution decree was entered in December 1987.  In August 1993, the wife filed a motion to modify.  One changed circumstance was that the oldest daughter was attending college and needed assistance with the cost.  In March 1995, the trial court entered a modification judgment that ordered the husband to pay one-half of the daughter's college costs for a state school or one-fourth of the daughter's college costs for a private college or university.  On appeal, the husband argued that this provision was too vague, indefinite and uncertain to be enforceable.  *Fulton*, 924 S.W.2d at 550-51.  Citing *Echele*, the western district of this Court agreed because the judgment "provides no limiting criteria, leaving the amount owed a matter of speculation."  *Id*. at 552.  Therefore, the appellate court reversed this portion of the judgment and remanded to the trial court to fashion a proper order.  *Id*. at 553-54.

In *Pratt*, the original dissolution decree was entered in January 2005. The judgment ordered that the husband and wife divide equally the cost of their daughter's educational, athletic, social and cultural development, with each party to pay no more than $50 per month. In October 2007, the wife filed a motion to modify because the husband had not been paying his share of the daughter's extraordinary expenses and non-covered medical expenses. The trial court entered an amended modified judgment that allowed the wife to solely determine which extracurricular activities were appropriate for the daughter, required wife and husband to share the expenses for such activities equally, and removed the $50 monthly maximum for these expenses. *Pratt*, 335 S.W.3d at 92-93. On appeal, the husband contended the trial court erred by removing the $50 monthly cap on each party's expenses. The husband argued that requiring him "to pay for half of those activities with no limitation as to the amount" makes the judgment "so vague and uncertain as to be void and unenforceable[.]" *Id*. at 93. The western district of this Court agreed because the trial court should have used limiting language to define the scope of the activities covered by the judgment or, alternatively, placed a cap on the extraordinary expenses that the husband had to pay for the daughter's extracurricular activities. *Id*. at 97. Therefore, the appellate court amended the judgment, pursuant to Rule 84.14, to impose an upper limit of $200 per month on the amount of extracurricular expenses each parent had to bear. *Id*.

After reviewing these decisions, we conclude that they are authoritative for the principle that a trial court's failure to use appropriate limiting language in the judgment for these types of expenses can be corrected in a direct appeal from that judgment. Here, however, Father does not complain that the June 11, 2021 modification judgment fails to include such limiting language. What Father argues is that the trial court, as a matter of law, could not rely upon the language in the 2008 judgment or the 2014 modification

10

judgment (which did not include such limitations) to adjudicate the amount of money owed by Father to Mother to reimburse her for such expenses. Father argues that he can collaterally attack those earlier judgments in this appeal because *Echele*, *Fulton*, and *Pratt* stated that the trial courts' errors in omitting the limitations made those terms of the judgments void and unenforceable. All three decisions say that, but those statements are not authoritative because they conflict with controlling precedent from the Supreme Court of Missouri for the following reasons.[5]

The first reason Father's reliance on *Echele*, *Fulton* and *Pratt* is misplaced involves the statements in those opinions that the absence of limitation language renders an expense provision in a judgment void and unenforceable. This language is a holdover from an era when many Missouri appellate decisions described mere legal errors as jurisdictional, which was then used to evade existing limitations on appellate review. This rationale is no longer valid in Missouri.

Beginning in 2006, the Supreme Court of Missouri held that the label of jurisdictional defect had no application to mere legal errors. *In re Marriage of Hendrix*, 183 S.W.3d 582, 590 (Mo. banc 2006); *see also* **State ex rel. State v. Parkinson**, 280 S.W.3d 70, 75 (Mo. banc 2009). Our high court further clarified that principle in *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009), which held that the Missouri Constitution specifies only two jurisdictional limits on a court's power to act: personal jurisdiction and subject matter jurisdiction. *Id*. at 252-254.[6] All non-jurisdictional errors

---

[5] This Court is constitutionally bound to follow the latest controlling decisions from our Supreme Court. MO. CONST. art. V, § 2; *Potter v. Hy-Vee, Inc.*, 560 S.W.3d 598, 605 (Mo. App. 2018); *Inman v. Dominguez*, 371 S.W.3d 921, 925 (Mo. App. 2012).

[6] Aside from these two jurisdictional limits, the only other reason a judgment can be void is if it was rendered without due process of law. *E.A.P. ex rel. V.C.I. v. J.A.I.*,

11

are subject to routine appellate review, and legal errors can be waived. *Parkinson*, 280 S.W.3d at 75; *Treasurer of State v. Van Horn*, 652 S.W.3d 680, 684 (Mo. App. 2022).

Consistently with the foregoing precedent, Rule 74.06(b)(4) also authorizes a court to relieve a party from a final judgment that is void. Pursuant to this rule, a judgment is void if "the court that rendered it lacked personal or subject matter jurisdiction or acted in a manner inconsistent with due process of law." *Forsyth Fin. Grp., LLC v. Hayes*, 351 S.W.3d 738, 740 (Mo. App. 2011); *Smith v. Smith*, 524 S.W.3d 95, 99 (Mo. App. 2017).[7] The concept of a void judgment is narrowly restricted to protect the strong public policy interest in the finality of judgments. *In re Formation of Neosho Transp. Dev. Dist.*, 416 S.W.3d 326, 333 n.7 (Mo. App. 2013). A judgment is not void simply because it is erroneous. *State ex rel. Zahnd v. Van Amburg*, 533 S.W.3d 227, 231 (Mo. banc 2017); *Hendrix*, 183 S.W.3d at 590; *Van Horn*, 652 S.W.3d at 684; *Baxi v. United Technologies Auto. Corp.*, 122 S.W.3d 92, 96 (Mo. App. 2003). As the eastern district of this Court explained in *State ex rel. Franklin v. Burlison*, 469 S.W.3d 498 (Mo. App. 2015):

> Even though we find that the transfer order was erroneous because it relied on the wrong venue statute, that error does not mean that the order was void or invalid such that it was a legal nullity. In general, a judgment is void or invalid only where the trial court lacked jurisdiction or the judgment was rendered without due process of law; a judgment is not void or invalid merely because it is erroneous.

---

421 S.W.3d 460, 463 (Mo. App. 2013); *Franken v. Franken*, 191 S.W.3d 700, 702 (Mo. App. 2006).

[7] As our Supreme Court explained in *J.C.W.*, "circuit courts shall have original jurisdiction over *all* cases and matters, civil and criminal." *J.C.W.*, 275 S.W.3d at 253 (italics in original).

*Id*. at 500; *see also* **E.A.P. ex rel. V.C.I. v. J.A.I.**, 421 S.W.3d 460, 463 (Mo. App. 2013) (trial court's decision to delegate judicial authority to parenting coordinator was a matter of trial court error and did not render that provision, or the entire judgment, void).

In the case at bar, the trial courts that issued the 2008 and 2014 judgments involving Father and Mother had subject matter jurisdiction over this dissolution action, personal jurisdiction over the parties, and complied with their rights to due process. Therefore, the 2008 and 2014 judgments were not void and, consequently, are not subject to collateral attack in this appeal. In **In re Marriage of Cornella**, 335 S.W.3d 545 (Mo. App. 2011), the husband complained about one provision from the original judgment, which the husband did not appeal. This Court held that the husband could not collaterally attack the prior provision in a later appeal:

> The argument advanced here is not an attack upon the validity of the entire original judgment, but only an attack upon one provision therein that is claimed to be void. It is undisputed that the trial court had jurisdiction over the parties and the subject matter when the original judgment was entered. That judgment became final and was not appealed by Husband. Unless the original judgment was reversed or annulled in some proper proceeding, its provisions are not open to contradiction, impeachment or modification in any collateral proceeding. A collateral proceeding is an attempt to impeach the judgment in a proceeding not instituted for the express purpose of annulling the judgment. [A] judgment rendered by a court with jurisdiction over the parties and subject matter is not open to collateral attack with respect to its validity or the conclusiveness of the matters adjudicated. The aggrieved party's remedy is by appeal, rather than by a motion to modify.

*Id*. at 556 (internal citations omitted); *see also* **State v. Russell**, 598 S.W.3d 133, 140 (Mo. banc 2020) (if a circuit court has personal and subject matter jurisdiction, the appropriate remedy for any error in the judgment is a direct appeal). **Cornella** is directly on point here. Father did not appeal from either the 2008 or the 2014 judgments, and thus, did not present the expense issue for decision. Accordingly, it is too late to do so in this appeal from the June 2021 judgment.

13

The second reason Father's reliance on *Echele*, *Fulton* and *Pratt* is misplaced involves our Supreme Court's adoption of Rule 78.07(c) in 2005. This subsection states that "[i]n all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." *Id.*; *see also Int. of J.C.S.*, 658 S.W.3d 260, 264 n.4 (Mo. App. 2023) (noting that this subsection became effective on January 1, 2005). The purpose of Rule 78.07(c) is to ensure that complaints about the form and language of a judgment are brought to the trial court's attention where they can be easily corrected, alleviating needless appeals, reversals, and rehearings. *Mercer v. State*, 512 S.W.3d 748, 753 (Mo. banc 2017).

As discussed above, the error identified in *Echele*, *Fulton* and *Pratt* is the failure of the judgment to include appropriate limiting language in the relevant expense provisions. This is axiomatically an error relating to the form or language of the judgment. The fact that the error must be raised in a motion to amend the judgment in order to be preserved for appellate review confirms, consistently with our foregoing discussion, that legal errors in a judgment must be remedied by direct appeal. More importantly, it is well settled that the failure to file a motion to amend constitutes a waiver of the alleged error. *See, e.g.*, *Sneil, LLC v. Tybe Learning Ctr., Inc.*, 370 S.W.3d 562, 574 (Mo. banc 2012); *Schumacher v. Stalder*, 644 S.W.3d 573, 579 n.5 (Mo. App. 2022); *Great W. Cas. Co. v. Carr*, 642 S.W.3d 306, 312 (Mo. App. 2022); *Southside Ventures, LLC v. La Crosse Lumber Co.*, 574 S.W.3d 771, 788 (Mo. App. 2019); *Fastnacht v. Ge*, 488 S.W.3d 178, 188 (Mo. App. 2016); *In re Marriage of Bottorff*, 221 S.W.3d 482, 485 (Mo. App. 2007).

Both *Echele* and *Fulton* were decided before Rule 78.07(c) became effective. The modification judgment in *Pratt*, however, was entered after August 2009. *Pratt*, 335

14

S.W.3d at 92-93. There is no indication in the opinion that the husband, who appealed, filed a motion to amend the judgment to challenge the removal of the limiting language from the expense provision. Accordingly, that issue was not preserved for appeal and should have been treated as waived by the appellate court, rather than being addressed on the merits. Thus, the opinion in *Pratt* is not authoritative for this additional reason.

For all of these reasons, Father's first point is not preserved for appellate review, and he waived the issue of whether the 2008 and 2014 judgments lacked appropriate limiting language in the expense provisions. Point 1 is denied.

*Point 2*

In Father's second point, he contends the trial court erred by awarding Mother the total amount she requested for the children's post-secondary education expenses, as summarized in Mother's Exhibit 81-B. Father argues that the trial court's calculation was against the weight of the evidence because these expenses were greater than each party was required to pay under the terms of the 2014 modification judgment.

An against-the-weight-of-the-evidence challenge requires the completion of four sequential steps:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition;
>
> (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
>
> (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

15

*Houston v. Crider*, 317 S.W.3d 178, 187 (Mo. App. 2010).

The first step of this analysis is to identify a challenged factual proposition in the judgment. Father contends he was being required to pay too much for his half of the post-secondary education expenses. As he acknowledges in his brief, however, the 2021 modification judgment does not state the exact amount Father owes. The trial court awarded Mother $141,283.52 for all expense reimbursement, which included college expenses for the two older children. The court found "that the college expenses requested by [Mother] do not exceed the maximum amount payable under the Court's prior judgment." To the extent Father is complaining that the judgment does not contain the exact amount he owes for college expenses, that issue was waived because it was not raised in a motion to amend the judgment. *See* Rule 78.07(c); *Schumacher*, 644 S.W.3d at 579 n.5.

The second step of the analysis is to identify all of the favorable evidence in the record supporting the existence of the proposition "that the college expenses requested by [Mother] do not exceed the maximum amount payable under the Court's prior judgment." Father has failed to do so because he ignores Mother's testimony on this issue. As noted above, she testified that: (1) the 2014 judgment used the cost of college at the University of Missouri-Columbia as the benchmark, with each parent paying half of that amount; (2) the annual cost to attend the University of Missouri-Columbia was $30,252; (3) M.H. went to the University of Arkansas business school, which cost $27,826 per year to attend; and (4) S.T.H. went to John Brown University, which cost $23,078 per year to attend. Thus, the favorable evidence in the record supports the trial court's finding "that the college expenses requested by [Mother] do not exceed the maximum amount payable under the Court's prior judgment."

16

The third step in the analysis is to identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit. This is where Father's argument fails. First, he argues that the trial court failed to identify the amount of college expenses assessed to Father. As noted above, this issue was waived due to Father's failure to include that issue in a motion to amend the judgment. Second, Father argues that the trial court failed to include any numbers or calculation to show that Mother's requested expenses were appropriate. This argument fails because Father did not file a motion to amend the judgment to include such information. It also ignores Mother's testimony on this issue, which the trial court had a right to believe. Father's reliance on Exhibit 81-B is misplaced because: (1) the trial court could believe Mother's oral testimony; and (2) there is nothing in the judgment showing the trial court awarded a sum greater than the yearly cost of attending the University of Missouri-Columbia. Because Father's argument fails to demonstrate that the trial court's findings were against the weight of the evidence on the college-expense issue, Point 2 is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCUR

JENNIFER R. GROWCOCK, J. – CONCUR